## Court of Appeals.

July 10, 1901.

# THE PEOPLE v. SAMUEL. GROSSMAN

(168 N. Y. 47.)

1. RECEIVING STOLEN GOODS—EVIDENCE OF OTHER THEFTS.

　　On the trial of an indictment for receiving stolen railroad brasses, the railroad was allowed to prove that four Polish boys attempted to steal a number of brasses; that one was caught; that defendant afterwards attempted to have a large number of brasses melted, and on arrest, confessed that an employee of his had bought them from four Polish boys. Held that the jury were justified in finding that the four Polish boys who had been pursued when in possession of the stolen property were the same persons who were dealing with defendant's employee according to his own admission.

2. APPEAL—CODE CRIM. PRO., § 527.

　　Error on criminal trials upon an appeal can be made available in the Court of Appeals only by exceptions duly taken on the trial, and Code Crim. Pro., § 527 did not change the old rule to this effect.

APPEAL from supreme court, appellate ·division, Fourth department.

Samuel Grossman was convicted of receiving stolen goods, and from a judgment of the appellate division (69 N. Y. Supp. 1141) affirming such conviction he appeals.

Vernon Cole, for appellant.

Frederick Haller and Thomas Penney, for the People.

BARTLETT, J.—The defendant was convicted on the 8th day of February, 1895, of criminally receiving stolen property, in violation of the statute, by the verdict of a jury at a trial term of the superior court of Buffalo. The judgment entered upon this verdict was unanimously affirmed by the appellate division on the 20th day of March, 1901. The record discloses no reason for this long delay. The unanimous decision of affirm-

ance precludes this court from any examination of the facts. As there are no exceptions to the charge of the learned trial judge, and no requests to charge were submitted, the defendant is confined to rulings against him, to which exception was duly taken, as to the admission or rejection of evidence. The case was submitted to the jury practically on the people's evidence, as the defendant rested after proving that railroad brasses—the kind of property involved in this indictment—were bought and sold under certain conditions in the city of Buffalo by junk dealers, and swearing a number of witnesses as to his good character. The counsel, for the defendant insists that the trial court erred in admitting evidence, over objection and exception, of thefts of other brasses than the ones involved herein, and the conviction that other persons who had stolen other brasses; also in refusing to strike out this evidence on motion duly made at the close of the case, to which rulings exception was duly taken. A brief reference to the facts is necessary in order to pass upon the exceptions thus presented. The defendant is charged in the indictment with feloniously buying and receiving one hundred and forty-seven pounds of brass, of the value of ten cents per pound, the property of the New York Central and Hudson River Railroad Company, well knowing that it had been stolen from said corporation. The people swore the master car builder of the railroad company, who had been thirty-five years in its employ, and who was in charge of the rolling stock from Niagara Falls to Rochester. This witness explained that the brasses in question weighed each from nine to thirteen pounds, and each constitutes the top of the box where the journal revolves, and protects it from friction and cutting; that, if removed, and not speedily discovered, the journal would be cut off, and the train wrecked. It further appeared that these brasses were manufactured by the railroad company, stamped with its name and a star, and were never sold for old metal until worn out and useless. The testimony of this witness and certain car inspectors disclosed that, while the cars of the railroad com-

pany were standing on the tracks in the East Buffalo yards in May and June, 1894, and at other times, these brasses were detached from the cars, and stolen by parties unknown; that in the spring of 1894 the loss and inconvenience to the company had assumed such proportions that the latter placed the matter in the hands of detectives. Two of these detectives were allowed to swear that before the arrest of the defendant they discovered, while watching the cars in the yard, a number of brasses on the ground that had been removed from a car, and nine in a bag at another place; that they pursued four Polish boys, who had brasses in their possession, arrested one of them, and the others escaped. The people further proved that the railroad company, in order to ascertain who were the receivers of their stolen property, established a forge for the smelting of brass at Cheektowaga, near East Buffalo. The details need not be stated, as it suffices to say that the defendant, who was under suspicion, became advised of the existence of the smelting forge, and on the late afternoon of June 27, 1894, drove to the premises with a companion, and under an arrangement previously made with one Peter Grant Brown, the supposed proprietor of the forge, to smelt brasses, produced a number of them, bearing the stamp of the railroad company, from a bag in their possession. Brown testified that at this previous interview the defendant, when asked by him how he wished the brass melted, said, " In little pieces, nubs, so that it could not be identified." The witness further stated: " I asked him what his object was to put it into the nugget form, and he said to transform the metal from the condition that it is to an unrecognizable condition. He told me why he wanted to do that,—so that he could sell it. * * * He said he could furnish me fifty tons." While this first smelting was in progress, the detectives appeared upon the scene, and arrested the defendant, his companion, and the supposed proprietor of the forge. They also took possession of the brasses the defendant had brought with him on that occasion. The detectives and the forge owner agree substantially that the

defendant said, when arrested, he was a fool; that he was caught; and begged to be shot then and there. The defendant was taken to the city of Buffalo in a carriage, and the detective who sat beside him testified that the defendant told him that one John Siebach, who formerly worked for him, bought or received the brasses from four Polish boys, who brought them to him between six and seven o'clock in the evening, and that he took the brasses from Siebach about midnight, and disposed of them. The witness further stated that defendant told him that the Polish boys came over to the tracks and got the brasses. Neither the defendant nor Siebach was sworn.

The Code of Criminal Procedure (section 393) provides that the defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him, and the trial judge charged the jury to that effect. Nevertheless, the people's case stood before the jury with the alleged declarations of defendant uncontradicted. It will be observed that it was necessary for the people to place before the jury the general situation at the time these brasses were being secretly removed from the cars in large numbers. This court has held that, upon the trial of an indictment for receiving stolen goods, evidence of a stealing from the same owners of similar goods by the same persons from whom the accused is charged with having received the goods in question with knowledge that they were stolen, but a short time before the transaction in question, is proper to prove the scienter. Coleman v. People, 58 N. Y. 555; People v. McClure, 148 N. Y. 95, 42 N. E. 523. The jury were justified in finding that the four Polish boys, who had been pursued when in possession of the stolen property, were the same persons who were dealing with defendant through Siebach, according to his own admission. The trial judge, in a careful and impartial charge, to which the defendant took no exception, placed the evidence before the jury in its proper light, and instructed them that they must be satisfied not only that this property was stolen from the railroad company, but

that defendant knew it to have been stolen, and received it as stolen property. We are satisfied that the exceptions of the defendant present no reversible error as to the introduction of improper evidence by the people.

The defendant's counsel further insists that the failure of the people to prove that the New York Central and Hudson River Railroad Company was a body corporate, as alleged in the indictment, was reversible error. There is no exception presenting this point. It might have been raised by a request to charge, and the district attorney would then have been afforded the opportunity of supplying the proof. People v. Formosa, 131 N. Y. 478, 482, 30 N. E. 492, 27 Am. St. Rep. 612.

The defendant's counsel argues that under section 527 of the Code of Criminal Procedure this court, on appeal from the appellate division, can consider questions of legal error in the absence of exceptions. Error on criminal trials upon an appeal from the appellate division can be made available in this court only by exceptions duly taken on the trial, and section 527 of the Code of Criminal Procedure did not change the old rule to this effect. People v. Guidici, 100 N. Y. 503, 508, 3 N. E. 493; People v. Hovey, 92 N. Y. 554; People v. Boas, Id. 560; People v. De Argencour, 95 N. Y. 631. The judgment appealed from should be affirmed.

PARKER, C. J., and GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Judgment of conviction affirmed.