# COURT OF APPEALS.

## December 11, 1917.

## THE PEOPLE v. ALFRED E. RICHARDSON.

### (222 N. Y. 103.)

EVIDENCE — RELEVANCY — EVIDENCE SHOWING THE DEFENDANT IN A CRIMI-
NAL TRAIL GUILTY OF OFFENSES OTHER THAN THAT CHARGED IS INADMIS-
SIBLE ALTHOUGH OFFERED ONLY FOR THE PURPOSE OF IMPEACHING A WIT-
NESS FOR DEFENDANT.

An impeachment or attack of a defendant in a criminal trial by proof
of any specific act or practice affecting his character and tending to show
that he is not worthy of credit can be sustained only when he has assumed
the status and character of a witness in his own behalf; · even then,
testimony which does not tend legitimately to discredit his evidence is
irrelevant and should be excluded, since the general character of the
defendant in a criminal trial may not be made an issue unless he chooses
to make it so by resorting to affirmative proof of good character.

SAME — WHEN WITNESS NOT AN ACCOMPLICE.

Defendant has been convicted of the crime of keeping a disorderly house,
and during the trial did not take the witness stand or by any testimony
make his character an issue. The trial court, upon the cross-examination
of a witness, who was the housekeeper for the defendant at the hotel
alleged to be a disorderly house, permitted the prosecution to elicit from
the witness that she had been employed as housekeeper at two other hotels
operated by defendant which had been held to be disorderly houses, and
for keeping which he had been sentenced to jail. *Held*, error; that an
impeaching cross-examination of a witness for a defendant in a criminal
trial cannot seek or educe, for the purpose of discrediting the witness,
testimony tending to prove that the defendant was of a criminal, degraded
or bad character, and the admission of such evidence cannot be justified
under the rule that, in an impeaching cross-examination, specific acts
which tend to discredit or impeach moral character may be educed and
to that end the way of life, the association and the practices of the wit-
ness are relevant. Such evidence is inadmissible, not because it did not
legitimately tend to prove an immoral and discredited character of the
witness, but because illegitimately and beyond obviation it subjected the
defendant to prejudice and to accusations not connected with the charge
at issue. *Held, further*, it was not error for the trial judge to refuse to

charge, at defendant's request on the facts proved, that *in law* the witness above mentioned was, on her own testimony, an accomplice of the defendant.

(People v. Richardson, 178 App. Div. 925, reversed.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 4, 1917, which affirmed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of keeping a disorderly house and of maintaining a public nuisance.

The facts, so far as material, are stated in the opinion.

*Robert H. Elder, Otho S. Bowling* and *Charles E. Russell* for appellant.

*Harry E. Lewis,* District Attorney (*Harry G. Anderson* of counsel), for respondent. The trial court properly declined to charge as a matter of law that the witness Caulfield was an accomplice. (People v. Zucker, 20 App. Div. 363; 154 N. Y. 770; People v. Katz, 209 N. Y. 311; People v. Sweeney, 213 N. Y. 37; People v. Elliott, 106 N. Y. 228; People v. Mayhew, 150 N. Y. 346; People v. Yannicola, 133 App. Div. 885. People v. Gerst, 137 App. Div. 272; Whart. Crim. Law [11th ed.], § 266; State v. Clauvet, 111 Iowa 687; Stone v. State, 47 Tex. Cr. 575; Jones v. State, 72 Tex. Cr. 497.) The cross-examination of the defendant's witness Nordahl, the effect of which was carefully limited by the trial court in its charge to the jury, was entirely proper and within the discretion of the trial court as bearing upon her credibility as a witness. (People ex rel. Phelps v. Oyer & Terminer, 83 N. Y. 436; People v. Giblin, 115 N. Y. 196; People v. Irving, 95 N. Y. 541; People v. Tice, 131 N. Y. 651; People v. Webster, 139 N. Y. 73; People v. Conroy, 153 N. Y. 174; Kruse v. N. Y. C. & H. R. R. R. Co., 146 App. Div. 485; People v. Katz, 209 N. Y. 311.)

COLLIN, J.:

I concur in the conclusion and the supporting reasoning of Judge CHASE that the refusal of the trial court to charge the request stated in his opinion was not error. I dissent from his conclusion that it was not error to receive the testimony considered in the opinion.

Katherine Nordahl was a witness for the defendant. Her direct examination in effect was: She lived and was employed as housekeeper at the Fulton Hotel (the house involved here) from February 4 to July 29, 1915. When on duty from eight o'clock in the morning until six o'clock in the afternoon, she would show guests to the assigned rooms. The hotel had from twenty-five to twenty-eight permanent guests. The defendant did not state to her, as testified by Katherine Caulfield, as a witness for the People, that he was sorry he had employed Mr. Wittek because he thought that Mr. Wittek and Mr. Keely were too timid to be in charge of the hotel and that couples were asking for rooms and were not being given them. The district attorney sought to impeach her by cross-examination. The part of the cross-examination material here is as follows: " Q. How long have you worked for Mr. Richardson? A. About a year and a half in all. Q. What other hotel or hotels besides the Bijou Hotel did you work in for Richardson? A. Manhattan. Q. When did you work in the Manhattan? A. Before I was married. Q. When was it, what year? A. 1909. Q. And what other year? A. And then again last year, that was all. Q. When you worked in it last year it had another name, didn't it? A. Majestic. * * * Q. How long have you known Richardson? A. From 1908. Q. Did you work in the Majestic Hotel after you left the Fulton Hotel last year or before that time? A. Before then, before I went to the Fulton. * * * Q. Did you know, Madam, when you went to work in the Majestic Hotel — that before the name was changed from the Manhattan to the Majestic Hotel, that that hotel had been abated

as a public nusiance because it was a disorderly house, did you?" The defendant objected to this question upon the ground, among others, that it was an attack upon the character of the defendant, that the limits of credibility are in the discretion of the court and that the limits of the examination as to credibility should stop when they conflict in an indirect way with the right of the defendant. The objection was overruled by the court, with the statement that the evidence was only admitted for the purpose of testing the credibility of the witness, to which ruling the defendant excepted. "A. Yes. * * * Q. Did you know that Richardson was convicted of running the Manhattan Hotel as a disorderly house and sentenced to jail before you went to work for him in the Majestic Hotel?" The objection that the defendant had not put his character in evidence and that the question was improper was overruled and an exception taken. "A. Yes. Q. And before you went to work for him in the Fulton Hotel, is that it? A. Yes. Q. Did you know before you went to work at the Fulton Hotel that that very same hotel, not the Manhattan now, but the Fulton Hotel — the same premises under the name Bijou Hotel had also been abated as a public nuisance? A. Yes. Q. Because that was a disorderly house? A. Yes.

The defendant did not during the trial take the witness stand or by any testimony make his character an issue.

It is a rule of law that it is error to receive evidence, upon the trial of an accusation, of an offense other than that charged. (People v. Thompson, 212 N. Y. 249; People v. McLaughlin, 150 N. Y. 365; Miller v. Curtis, 158 Mass. 127.) This rule which excludes evidence of other crimes unless the evidence is relevant to the issues on trial should be strictly enforced. Evidence is relevant to the issues on trial whenever it tends directly to show the defendant guilty of the crime charged in the indictment under which he is being tried. (People v. Thau, 219 N. Y. 39.) The conditions or elements which render it thus relevant are fairly well defined and declared. (People v.

Molineaux, 168 N. Y. 264, 16 N. Y. Crim. 120; People v. Thau, 219 N. Y. 39; People v. Grutz, 212 N. Y. 72, 31 N. Y. Crim. 302; People v. Thompson, 212 N. Y. 249, 31 N. Y. Crim. 520.) No one of them exists in the case at bar. .

It is also a well-established rule that an impeachment or attack of a defendant in a criminal trial by proof of any specific act or practice affecting his character and tending to show that he is not worthy of credit can be only when he has assumed the status and character of a witness in his own behalf. As such witness he may be impeached through the methods applicable to any witness. The impeachment is not for the purpose of showing that he was the kind of person who would be willing to commit the offense charged, but solely for the purpose of diagnosing his conscience and thereby enabling the jury to determine the extent of his veracity and credibility as a witness. Testimony which does not tend legitimately to discredit his evidence is irrelevant and should be excluded. (People v. Hinksman, 192 N. Y. 421.)

It is also an elementary rule that the general character of the defendant in a criminal trial may not be made an issue unless he chooses to make it so by resorting to affirmative proof of good character. (People v. Hinksman, 192 N. Y. 421, 22 N. Y. Crim. 585; People v. Lingley, 207 N. Y. 396, 29 N. Y. Crim. 218; People v. Pekarz, 185 N. Y. 470, 20 N. Y. Crim. 159; People v. Fitzgerald, 156 N. Y. 253.)

The violation of either of these rules by a trial court is cogent ground for the reversal of a judgment based in part upon the violation. (People v. Jones, 191 N. Y. 291.) It is manifest that the testimony at hand was in direct and thorough violation of, at least, the first two of them. The district attorney urges, in justification of its admission, the rule that in an impeaching cross-examination specific acts which tend to discredit or impeach moral character may be educed and to that end the way of life, the associations and the practices of the witness are relevant. This argument is that the testimony of Katherine Nordahl would be seriously disparaged in case it was proven that

she entered and remained in the employment of the defendant at the Majestic Hotel and the Fulton Hotel with the knowledge that he had maintained disorderly houses and had been convicted of maintaining a disorderly house; that her association with the defendant, after he had committed and she knew he had committed such acts, evidenced a torpid or dwarfed conscience permitting a disregard of the truth. Under this argument it might have been shown by the witness, had the facts existed, that the defendant maintained and operated in a room of the hotel an outfit for common gambling, and lived there in habitual adultery, or there committed any other crime or flagitious act. Assume another illustration: A person is on trial under an indictment for murder. His chauffeur as a witness in his behalf testifies that at the time of the murder the defendant was at a place other and distant from that of the killing. Through an impeaching cross-examination, the witness is compelled to testify that the accused while his employer and through the years preceeding his employment had, as the witness had known when he entered or remained in his service, been convicted or been guilty of embezzlement, highway robbery and burglary and of other criminal or disgraceful acts. Other and various illustrations occur readily to the experienced mind. The rule, which the argument asks us to establish, would apply whenever a partner, clerk or business associate, relative or friend of the accused defendant, who companioned with him, was a witness in his behalf. Each specific immoral, indiscreet degrading or criminal act of the defendant, known to the witness, could be revealed to the jury upon the ground that association with a man so characterized affected the veracity and credibility of the witness.

The reasons for the established rules, which I have stated, forbid the rule urged upon us by the argument of the district attorney. Those reasons are that the evidence which they bar would have a tendency to withdraw and mislead the attention of the jury from the real issue under inquiry and would subject the accused to charges unconnected with that issue and against which he had no reason to prepare. (People v. Thompson, 212 N. Y. 249, 31 N. Y. Crim. 520.) In People v. Sharp (107 N. Y. 427,

461, 5 N. Y. Crim. 569) Judge DANFORTH said: " Such evi-
dence is uniformly condemned as tending to draw away the
minds of the jurors from the real point on which their verdict is
sought and to excite prejudice and mislead them." In Common-
wealth v. Jackson (132 Mass. 16) Judge DEVENS said: " Such
evidence compels the defendant to meet charges of which the
indictment gives him no information, confuses him in his
defense, raises a variety of issues, and thus diverts the attention
of the jury from the one immediately before it; and, by showing
the defendant to have been a knave on other occasions creates a
prejudice which may cause injustice to be done him." Professor
Wigmore, speaking of the evidence prohibited by the first two of
the rules, said: " The law here declares a general and absolute
rule of exclusion; " and for the three reasons: " (1) The over-
strong tendency to believe the defendant guilty of the charge
merely because he is a likely person to do such acts; (2) the
tendency to condemn, not because he is believed guilty of the
present charge, but because he has escaped unpunished from
other offenses; (3) the injustice of attacking one necessarily
unprepared to demonstrate that the attacking evidence is fabri-
cated." (1 Wigmore on Evidence, sections 192, 193, 194.)

The reasons are rooted in practical policy, justice and fair-
ness. It is not a part of them that the proof they forbid is not
relevant to the real issue, namely, is the defendant guilty or not
guilty. Indeed, the exclusion is rather because they have an
inescapable and a too potent relevancy. For reasons of policy
and humanity rather than of irrelevancy is the evidence
excluded. " The natural and inevitable tendency of the tribunal
— whether judge or jury — is to give excessive weight to the
vicious record of crime thus exhibited, and either to allow it to
bear too strongly on the present charge, or to take the proof of it
as justifying a condemnation irrespective of guilt of the present
charge." (1 Wigmore on Evidence, section 194.)

The reasons stated determine the question here. The evidence
was inadmissable, not because it did not legitimately tend to
prove an immoral and discredited character of the witness, but

because illegitimately and beyond obviation it would subject the defendant to the prejudice and the injustice which the reasons declare and condemn. The wrong which would result from its illegitimate weight overbears its relevancy and suppresses its use for impeachment. (See Regina v. Rowton, 10 Cox Crim. Law Cases, 25.) Judicial opinion has not been wholly silent concerning the question under consideration. In Hamilton v. State (34 Ohio St. 82) a judgment of conviction was reversed on the ground that the cross-examination of a witness in behalf of the defendant elicited the fact that the witness jointly with the defendant had been indicted for burglary. This case is cited without comment by Professor Wigmore. (2 Wigmore on Evidence, section 987, note, page 1140.) In People v. White (251 Ill. 67) the defendant was on trial for the murder of Levy in Levy's restaurant. The defendant conducted a saloon. His bartender testified as a witness in his behalf. The State's attorney conducted an impeaching cross-examination tending to prove the connection of the witness with gambling houses and that he was a common gambler. The court held that it was proper to cross-examine the witness as to his occupation and other matters which would enable the jury to determine what weight ought to be given to his testimony, and said with manifest significance: " The court did not permit any question as to what work the witness did in the defendant's saloon or what took place there, and there was no attempt to make any such proof after the question was raised and the ruling made." (See, also, McAlister v. State, 99 Ark. 604; People v. Coston, 187 Mich. 538; Mercer v. State, 66 S. W. Rep. 555.)

I conclude it is a rule of law that an impeachment cross-examination of a witness for a defendant in a criminal trial cannot seek or educe, for the purpose of discrediting the witness, testimony tending to prove that the defendant was of a criminal, degraded or bad character.

I vote that the judgment be reversed and a new trial ordered.

CHASE, J. (dissenting):

In 1915 the defendant was the proprietor of the Fulton Hotel in Brooklyn. He has been convicted of conducting it as a disorderly house and of maintaining it as a public nuisance.

The hotel had about thirty-five rooms, four of which were occupied by the employees, and twenty or more by permanent guests. It is claimed that the rooms not occupied by the employees and permanent guests were rented for immoral purposes. The evidence is sufficient to establish such contention.

The defendant did not live at the hotel but conducted it through employees, and was not present thereat more than two or three times a week. The dinning room was sub-let. Two clerks were employed in the office and a houseekeper and maid on the bedroom floors. It was, of course, essential for the People to show that the defendant knew that the rooms were being rented for immoral purposes. The clerks were sworn as witnesses for the People and gave testimony which, if true, shows that the rooms were so rented, not only with the defendant's knowledge, but by his direction. The clerks were under the general direction of the defendant, but in his absence had control of the hotel and its guests, and they necessarily assumed personal responsibility for their own acts in connection therewith. They were accomplices with the defendant, and at the time when they gave testimony had been indicted as principals. The defendant's conviction cannot be sustained upon their testimony unless it is corroborated by such other evidence as tends to connect the defendant with the commission of the crime. (Code of Criminal Procedure, § 399.)

Some slight circumstances were disclosed which it is claimed tend to corroborate the testimony of the clerks, but the most important evidence of the People in corroboration of their testimony relating to the defendant's knowledge of the use to which the rooms were placed was the testimony of the maid.

The court was asked to charge the jury as follows: " Defend-

ant's counsel: I ask your honor to charge the jury that *in law* Katherine Caulfield (the maid) on her own testimony is an accomplice in the keeping of this disorderly house. The Court: On what, in her testimony, do you base that? Defendant's counsel: I base it on her testimony that she continued to work after she had said that she had seen these girls go up to rooms with men on different occasions. The Court: I decline to charge that, gentlemen. Defendant's counsel: I take exception."

Whether it was error for the court to decline to charge as requested is a question for determination on this appeal. The maid testified to certain statements which she alleges were made to her by the defendant, and to a conversation which she alleges she overheard between the defendant and the housekeeper. The testimony of the maid tends to show that the defendant knew the use to which the rooms were being placed. The duties of the maid, so far as appears from the record, were to care for the rooms of the house and occasionally in the absence of the house-keeper to meet people in the hallway on signal from the office, and show them to rooms to which they were assigned, and for which they held tickets given to them at the office and take such tickets for subsequent delivery to the housekeeper. She also testified that about a dozen times while she was there, she saw certain girls go to rooms in the hotel with men, but she could not say whether they were the same men each time. Was she an accomplice?

She was not an owner, agent or lessor, or a lessee, proprietor or keeper of the house within the meaning of the statute. (Penal Law, § 1146.) The defendant did not ask the court to submit to the jury the question whether the maid was an accomplice. Such a request should have been made to the court, and if refused, excepted to if it is now to be claimed that such a charge should have been made. (People v. Grossman, 168 N. Y. 47, 15 N. Y. Crim. 527; People v. Pindar, 210 N. Y. 191, 31 N. Y. Crim. 13.)

The question presented to the court by the request to charge and the statement of the defendant's course as his basis for the request is, in substance, whether if an employee in a house sees girls at different times going to rooms with men, and continues in her employment, she thereby becomes an accomplice in keeping a disorderly house. The basis stated does not even include a finding or assumption that the house was in fact disorderly.

One is not to be deemed an accomplice merely because he had knowledge of the intended commission of a crime, unless he in some way aids or incites its commission. (People v. McGonegal, 136 N. Y. 62, 32 N. Y. Crim. 112; Bird v. U. S. 187 U. S. 118.) An accomplice is one who unites in the commission of the crime and who participates in the criminality of the act. (Gaston v. State, 128 S. W. Rep. 1023.)

If we assume that the defendant's contention that the maid was an accomplice was sufficiently presented to raise the question for our consideration we are of the opinion that the question was at most one of fact and not of law. The burden rested on the defendant to show that the maid was an accomplice, and to see that the question was properly raised and presented to the jury. To hold that the maid was an accomplice it was necessary for the court or jury to find that she knew that the rooms were used for immoral purposes and that she aided and abetted such purpose, and that she either directly or indirectly counseled, commanded, induced or procured the commission of the crime. (Penal Law, § 2.)

The generally accepted test as to whether a witness is an accomplice is whether he, himself, could have been convicted for the offense either as principal or accessory. (People v. Sweeney, 213 N. Y. 37, 46, 32 N. Y. Crim. 232; People v. Zucker, 20 App. Div. 363; affd., on opinion below, 154 N. Y. 770; People v. Bright, 203 N. Y. 73, 79, 26 N. Y. Crim. 377; People v. Swersky, 216 N. Y. 471; People v. Hyde, 156 App. Div. 618; People v. Bruno, 164 App. Div. 32, 32 N. Y. Crim. 140; Ruling Case Law, Vol. 1, page 157.)

In the Zucker Case a person not connected with nor concerned in the commission of the crime of arson in the first degree, and who according to his own testimony positively declined to assist in it, was held not to have become an accomplice as matter of law by the mere fact that he, at the request of the accused shortly before the crime was committed, removed some plaster from a wall in a room of a building subsequently burned through which wall the accused intended that the fire should spread and had at the time without disclosing it knowledge of the principal's guilty intention. Even if in this case it were found that the maid knew the purpose for which the rooms were rented, there remains the distinction between the clerks who were held to be accomplices as a matter of law, and the maid who was held not to be an accomplice as a matter of law, in that the former had control and authority in the hotel, while the maid performed subordinate and perfunctory acts without authority or control in connection therewith or without doing any act to induce or encourage the commission of a crime. It does not appear as a matter of law that the maid had any more control over the management of the house than would a cook or a laundress, neither of whom are accomplices as a matter of law.

The distinction is stated in Commonwealth v. Churchill (136 Mass. 148). In that case a master and his servant were indicted for keeping and maintaining a tenement used for the illegal sale of intoxicating liquors. Referring to the servant and holding that he was not liable when not in charge and control of the tenement, the court say: " It is true that sales in the presence of the master do in some degree aid the master in keeping the tenement. But so do purchases, which nevertheless are not misdemeanors of any description. (Commonwealth v. Willard, *ubi supra.*) The distinction between acts which amount to maintaining the nuisance and those which do not, is one of degree. We do not think that the misdemeanor of unlawful selling, committed by a servant, can be said as a matter of law to amount to

maintaining a nuisance, unless he has assumed a temporary control of the premises, or in some other way emerged from his subordinate position to aid directly in maintaining it."

Our statute relating to a disorderly house (Penal Law, § 1146) is against *keeping or maintaining* such a house or place.

The court did not err in refusing to charge the request relating to the maid as quoted.

The housekeeper was called as a witness by the defendant and she denied the conversation that the maid testified she overheard between her and the defendant. Her testimony was material and important and on her cross-examination the People showed by her that she had worked for the defendant in the Manhattan Hotel in 1909 and subsequently in the same hotel after its name had been changed to the Majestic; and also that before working for the defendant in the Fulton Hotel she had worked therein for him when the same was conducted in the name of the Bijou Hotel. The People then asked her certain questions and stated that they were propounded for the purpose of showing facts affecting the credibility of the witness. The witness was asked: " Did you know, Madam, when you went to work in the Majestic Hotel — that before the name was changed from the Manhattan to the Majestic Hotel that that hotel had been abated as a public nuisance because it was a disorderly house ? "

This was objected to by the defendant as an attack on the defendant and his counsel asserted that the court should *in its discretion* sustain the objection. The court replied: " The witness is on the stand. Her credibility is now the paramount issue. * * * Anything that is calculated to bring out whether or not she is a person worthy of belief here is of the utmost importance. Now, incidentally if there may come up something that reflects upon the defendant it seems to me that it is one of those necessary things that cannot be avoided and I think I can cover that in my instructions. * * * This is only admitted for the purpose of testing the credibility of the witness."

The defendant excepted, and the witness answered, " Yes."

She was asked: " Did you know that Richardson was convicted of running the Manhattan Hotel as a disorderly house and sentenced to jail before you went to work for him in the Majestic Hotel ? "

It was objected to by the defendant as prejudicial to the defendant and his counsel again stated that the limits of allowing questions affecting the credibility of the witness " are well defined, of course they are within your honor's discretion," but urged that the limits of discretion had been reached. The objections were overruled and the defendant excepted. The witness answered, " Yes." No objection was made to the testimony because the record of conviction was not produced. All the district attorney sought to prove was the understanding of the witness and her acts based thereon.

She was asked, " and before you went to work for him in the Fulton Hotel, is that it ? " The witness answered, " Yes." She was asked, " Did you know before you went to work at the Fulton Hotel that that very same hotel, not the Manhattan now, but the Fulton Hotel, the same premises under the name of the Bijou Hotel had also been abated as a public nuisance ? " The witness answered, " Yes."

It is claimed that the answers were in effect an attack on the character of the defendant and that their admission was error. In the charge to the jury the trial judge said: " When the witness Mrs. Nordahl (the housekeeper) was on the stand the question was asked her as to whether or not when she went to work in this Fulton Hotel she did not know that the defendant had previously been convicted of maintaining a disorderly house, and did not know that some house with which he had been connected had been abated as a public nuisance, to which she replied that she did. That evidence was admitted only for the purpose of enabling you to determine what weight or credibility is to be given to her testimony. In other words, you will consider that

evidence only in determining how much or how little of her testimony you will believe. You will not permit the fact that that question was asked to influence your minds as against the defendant. That is to say if your minds were to be in this condition, that you were to say ' I would have a reasonable doubt of the guilt of this defendant, if it were not for the fact that he had been previously convicted,' then you must give the defendant the benefit of that doubt and acquit him. If there is a reasonable doubt in your mind based upon the evidence, which would persist excepting for that fact that *was intimated in the question* then you must give the defendant the benefit of that doubt and acquit him; because you must not allow that circumstance to remove a reasonable doubt that would otherwise exist in your mind. I realize, of course, that it may be perhaps difficult to separate evidence that has been introduced into the case, and limit its application to what under the law I deem to be a proper application of the evidence and exclude it in other cases; but I charge you and admonish you that you must do that in the case and not infer anything adverse to the defendant from what appeared in that case, but limit the consideration of that fact to determining how much weight you will give to the testimony of Mrs. Nordahl."

When the questions to the housekeeper that I have quoted were asked it was apparent that the jury would soon have to determine whether the testimony of the maid or that of the housekeeper would be believd. The People sought to prove that the housekeeper knew and appreciated the business methods of her employer and her readiness notwithstanding her knowledge to continue to serve him. The jury in determining whether it would believe her testimony had a right to take into account her willingness to return to the place where she had been employed after it had been for a time closed and the defendant had been found guilty of conducting therein a disorderly house. Suppose it had been proven that the defendant had been twenty times convicted of keeping a disorderly house and the witness

had each time gone back as the housekeeper in the same place and the defendant as her employer, would not proof of such conduct be admissible for consideration of the jury in determining whether she told the truth in testifying in his behalf?

Anything tending to show her standards of life and morals could be considered in determining whether she was telling the truth in this case. The People had already introduced evidence tending to show that the house was in fact disorderly. The question was whether she was the kind of a woman who would be willing to remain there as housekeeper although she knew it to be disorderly. It is not a crime to live in a disorderly house if one has no interest in it and takes no part in conducting it. While not a crime to live in such a house such mode of life does indicate an indifference to the moral standards of decent society which a jury may consider in determining whether such a person would be willing to wink at immoral practices and perhaps color her testimony to protect those with whom she had been associated.

When the object of an examination of a witness is to ascertain his credibility, its method and duration are subject to the discretion of the trial judge and unless abused its exercise is not the subject of review. (Langley v. Wadsworth, 99 N. Y. 61, 63, People ex rel. Phelps v. Oyer & Terminer, 83 N. Y. 436, 460.)

In the discretion of the trial judge the association by a witness with a person known to have been convicted of a crime is a fact to be considered by the jury in determining the weight to be given to his testimony. (People v. Katz, 209, N. Y. 311; 30 N. Y. Crim. 373.)

Wigmore in his work on Evidence, referring to the right to cross-examine a witness in an effort to impeach him, says, " By the rule obtaining in most jurisdictions of the United States the repression of possible abuses is left in the discretion of the trial judge." (Wigmore on Evidence, § 983.)

It seems clear that the trial judge in his discretion properly allowed the district attorney to show that the housekeeper had first been employed in the Manhattan Hotel and subsequently in the same hotel under another name, and that she had also been employed' in the Bijou Hotel and subsequently again in the same hotel under another name and that in each case before the change was made the hotel had been closed because it had been used for immoral purposes. The witness in each case after the hotel was reopened accepted employment therein notwithstanding her knowledge that the reason for their having been closed respectively was that they had been used for immoral purposes. The fact that the person who had been the proprietor of the hotels and each of them closed as stated, was the proprietor in each case when they were reopened to the public, was a fact that the jury might consider in connection with the willingness of the witness to accept a position in such hotels as a housekeeper. The fact that the places had been severally used for immoral purposes was no more of weight than the fact that the same person who had conducted them again as immoral places was to conduct them again with the witness in her old position as housekeeper. Both facts could be taken into consideration in connection with the credibility of the witness. The trial judge in his charge was careful to confine the testimony to consideration in connection with her credibility as a witness, and to prevent its improper use in an attack upon the defendant's character. The evidence was inadmissible as against the defendant, but the standard of morals of the witness was material and the evidence was admissible as affecting her character and credibility. Under the circumstances of this case I do not think that there was such an abuse of discretion by the trial court and the Appellate Division as to require a reversal of the judgment by this court.

The defendant asserts that it was bad pleading to charge him in one indictment with the maintenance of a disorderly house

and of a public nuisance.   Both counts relate to the same time and place.   (People v. Gold, 205 N. Y. 599.)   No demurrer was interposed to the indictment and no exception was taken on the trial to a ruling relating to it.   No question of law is presented in connection therewith which this court can review. (People v. Wiechers, 179, N. Y. 459, 18 N. Y. Crim. 554.)

The other points raised by the defendant do not require consideration in the opinion.

The judgment should be affirmed.

HISCOCK, Ch. J., HOGAN and CRANE, JJ., concur with COLLIN, J., and CARDOZO, J., concurs in result; CHASE, J., reads dissenting opinion and McLAUGHLIN, J., concurs.

Judgment reversed, etc.