Wachtler, J.
A jury found the defendant, Francis Mullin, guilty of robbery in the first degree, assault in the second degree and criminal impersonation. He was sentenced to concurrent sentences of eight and one-third to 25 years on the robbery count, zero to seven years on the assault charge, and one year for criminal impersonation. The primary issue on this appeal is whether the prosecution’s introduction of testimony concerning Mullin’s prior criminal record calls for a reversal and the ordering of a new trial.
According to the testimony of the People’s witnesses at the trial, on July 29, 1972 the appellant and his codefendant, Thomas O’Connor, rang the doorbell at the complainant’s home in Queens and gained admission to the house by displaying a badge and identifying themselves as detectives from the homicide squad. After some initial inquiries with respect to an alleged homicide, Mullin handcuffed the victim and told him they were taking him into custody. Mullin then drew a gun and pointing it at the victim, announced: "I am no cop. I am taking you off.” Thereafter, Mullin proceeded to torture and assault the victim in an attempt to force him to divulge the combination to a safe located in the home. After this abuse had persisted for approximately one hour without success, Mullin removed approximately $500 from the victim’s pocket and a ring from his hand. The two intruders then fled.
It was the trial testimony of Detective Peano, the officer *477 assigned to the investigation of this crime, which made it clear that Mullin had a prior criminal record. Peano testified that on November 13, 1972 he accompanied the victim to the Bureau of Criminal Identification. The victim viewed approximately 100 photographs and identified one as being that of one of his assailants. On the redirect examination of Peano, the People offered into evidence and had read into the record, without objection from Mullin’s trial counsel, a written report prepared by the detective. The report stated, inter alia, that: "On November 13, of 1972, the complainant accompanied the assigned [Peano] to the Bureau of Criminal Identification and, after viewing photos, positively identified one, Francis Mullin, male, white, 49 years of age, date of birth, August 31, 1923, B No. 200683 as perpetrator number two in this case.”
When the Assistant District Attorney examined Peano with respect to the content of the report, specifically seeking information concerning the significance of the "B number”, the following discourse ensued:
"Q. Now you testified in the last exhibit, People’s 7 in evidence [the report in question] as to a B number.
"A. That’s correct.
"Q. What does that 'B’ mean?
"MR. LUSTHAUS: Objection, your Honor.
"THE COURT: Sustained.
"Q. Did that number exist prior to that report?
"MR. LUSTHAUS: Objection.
"THE COURT: Sustained.
"Q. What is a 'B’ number?
"MR. LUSTHAUS: Objection.
"THE COURT: Sustained.
"Q. Where did you get that information from that is in that report?
"MR. LUSTHAUS: Objection.
"THE COURT: Overruled.
"A. From the Bureau of Criminal Identification.
"MR. KATSORHIS: May I have that, People’s 7? (Handed to counsel.)
"Q. Now, it has on People’s 7 in evidence, item number 3: 'On November 13, 1972, the complainant accompanied the assigned to BCI and after viewing photos, positively identified *478 one, Francis Mullin, male, white, 49 years, date of birth 8-31-23, B-Number 200683 as perpetrator number 2 in this case.’
"Where did this number 'B-200683’ come from?
"MR. LUSTHAUS: Objection.
"THE COURT: Overruled.
"A. From the criminal file. Those who have records.
"Q. Was Mr. O’Connor’s picture in that file?
"A. No.
"Q. Why not?
"MR. LUSTHAUS: Objection.
"THE COURT: Sustained.
"Q. Was Mr. Mullin’s picture in that file?
"A. Yes.
"MR. LUSTHAUS: Your Honor, this has all been asked and answered.
"THE COURT: Yes, objection sustained.
"Q. Are you aware of where the pictures come from that are employed by the Bureau of Criminal Identification?
"MR. LUSTHAUS: Objection.
"THE COURT: Objection sustained, and the jury is instructed not to draw any inference or make any suggestion from these last few questions put to the witness by Mr. Katsorhis.”
Shortly after this colloquy, the People rested. The defense called no witnesses. Thereafter, during the course of his summation, the Assistant District Attorney again made reference to Mullin’s prior criminal history stating: "Let us remember two things, gentlemen—that the defendants in this trial are Francis Mullin and Thomas O’Connor. Now [defense counsel] was very clear in expressing that Thomas O’Connor’s life is in your hands, his fate is in your hands. The man has been working twenty-two years for the Department of Correction. He had to bring that out. Who brought it up? But did he bring in the course of employment or the past history of his codefendant Francis Mullin?”
The defendant argues that the prosecutor deliberately placed the fact of his prior criminal record before the jury and that this was so prejudicial as to require a new trial. The People, on the other hand, contend that the claim of error which the defendant seeks to argue was not properly pre *479 served for appellate review by reason of the failure of defense counsel to object to the detective’s written report when it was originally introduced into evidence. Further, the People contend that the exposure of the existence of defendant’s prior criminal record, while unfortunate, does not justify a reversal of the conviction.
It is axiomatic that the prosecution is prohibited from introducing evidence of the past criminal record of a defendant where, as here, he has not taken the stand in his own behalf or put his character in issue (People v Robbins, 38 NY2d 913; People v Richardson, 222 NY 103, 109; 1 Wigmore, Evidence [3d ed], § 57]). This court has declared that "[inflexibly the law has set its face against the endeavor to fasten guilt upon [a defendant] by proof of character or experience predisposing to an act of crime * * * The endeavor has been often made, but always it has failed” (People v Zackowitz, 254 NY 192, 197).
Turning our consideration first to whether the defendant’s claim of error was properly preserved for appellate review (see CPL 470.05), it is true that the defendant made no objection when the People initially introduced Detective Peano’s report into evidence, nor did he attempt to have deleted the references in the report to the Bureau of Criminal Identification or the B number. We would merely observe, however, that the report standing alone did not place before the jury the fact that the defendant had a criminal record. While it might be said that in today’s society a sophisticated jury might well have realized, or perhaps speculated, that the location of defendant’s photograph in the Bureau of Criminal Identification files indicated prior criminal activity, it is equally if not more conceivable that they would not have been aware of his background based solely on the information appearing in the detective’s report. Indeed, it was developed at trial that Mullin’s codefendant, a corrections officer, was also identified from a photograph shown to the witnesses by the police, yet it is unclear even at this stage of the proceedings whether he too had a criminal history.
The defendant’s criminal record was not directly placed before the jury until the prosecutor deliberately and persistently sought to elicit testimony concerning it from Detective Peano. The defense counsel strenuously and continuously objected to this testimony. We are therefore of the opinion that the issue was sufficiently preserved.
*480 Reaching the merits, there can be no doubt as to the potentially prejudical effect which the revelation of Mullin’s criminal record would have on the jury. We note the manner in which the defendant’s criminal past was forcefully and unrelentingly thrust upon the jury, admittedly without any conceivable justification and over the objections of defense counsel. Then again in his summation the prosecutor hammered home to the jury the fact that it was dealing with a man with a history of criminal activity. It cannot be gainsaid that this testimony and the prosecution’s statements could have served only to mislead and prejudice the minds of the jurors and distract them from the issues and evidence upon which they were to make their determination (see People v Montanez, 41 NY2d 53, 58-59; People v Sharp, 107 NY 427, 61). Nor can it be said that this taint was sufficiently dissipated by the trial court’s attempt to have the jurors dismiss these statements from their minds. In the jury’s eyes these references to the defendant’s criminal background may have made "the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict” (United States v Reed, 376 F2d 226, 228).
We conclude therefore that the order of the Appellate Division should be reversed and a new trial ordered.