**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William R. GROOMS a/k/a Billy Grooms, Defendant and Appellant.**

**No. 15306.**

Supreme Court of South Dakota.

Argued Nov. 18, 1986.

Decided Jan. 14, 1987.

Dennis R. Holmes, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Michael Stonefield of Pennington County Public Defenders Office, Rapid City, for defendant and appellant.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Defendant-appellant, William Grooms (Grooms), was convicted of two counts of Grand Theft by Disposal of Stolen Property; count one involved a beaded Indian dress and count two involved a horsehair headstall. He was sentenced to serve eight years in the penitentiary on each count, the sentences to run consecutively. Appellate counsel was not trial counsel. Grooms contends that he is entitled to a new trial due to three alleged errors committed below:

 (1) That evidence of stolen Indian arti-
 facts not included in the indictment (a

rock figurine, some pipestems, and a leather pouch) were improperly admitted into evidence;

(2) that Grooms was not allowed to fully explore the bias of a key prosecution witness, Roy Cooper (Cooper), in that he sought to question Cooper on cross-examination regarding Cooper's alleged abuse of Grooms' three sons; and

(3) that an accomplice instruction was not given to the jury concerning another key prosecution witness, Merle Locke (Locke).

We treat these issues seriatim. We affirm the convictions on both counts.

## FACTS

Roy Cooper is a native of Arizona. He was recruited by the Arizona Livestock Board and worked as an undercover detective in 1981 and 1982. In October 1983, Cooper was employed by the State of South Dakota as an undercover officer. One of Cooper's assignments was to attempt to purchase stolen property.

William Grooms was involved in trading horses. He lived with his girlfriend (later wife) Lana Peterson in Rapid Valley. Grooms had three sons by the former Linda White. White and Grooms never married, but lived as husband and wife for almost ten years, between 1973 and 1982.

Linda White is presently married to Roy Cooper. White and Cooper met while the latter was involved in undercover work focusing on Grooms. White and Grooms have been involved in a furious custody battle. Accusations of child abuse were made by both sides. Grooms has leveled such charges at Cooper. Cooper is admittedly very interested in having the three boys stay with Linda (White) Cooper. Grooms asserts that White and Cooper fabricated the theft charges against him in order to smother his child custody chances.

Cooper testified that in March or April of 1984, he approached Grooms concerning a horsehair headstall. Grooms offered to sell the item to Cooper. On May 23, 1984, Grooms set the price on the headstall at $300 which Cooper paid to Grooms by check the next day. Cooper noted that he took possession of the headstall on June 8 at a rodeo in Rapid City.

Cooper also met with Grooms on May 14, 1984, at Rushmore Stables. Cooper testified that he saw Grooms in conversation with Merle Locke and some other men. The group was near a car upon which was a bag of items. Cooper testified that he later had the opportunity to identify some of the items as a beaded Indian dress and a squash blossom necklace. According to Cooper, Grooms said he was buying these "trinkets" from Locke.

Later that same day, Grooms reportedly informed Cooper that the dress, necklace, and a Black Hills gold watchband were stolen from the Crazy Horse Museum near Custer, South Dakota, by Merle Locke. Cooper testified that Grooms offered to sell him the dress. Cooper noted that he purchased the dress on May 15, 1984, for $1,000.

Cooper further testified that he bought some Indian artifacts from Grooms on June 10, 1984, at a rodeo in Sturgis. The sale included a rock figurine, some pipestems, and a leather pouch. These items were found to have originated from a Meade County burglary.

Merle Locke testified for the State against Grooms. Locke had agreed to testify in exchange for the State's promise that he would not be prosecuted and that his statements would not be later used against him. Locke had two earlier convictions for thefts of Indian artifacts. He was on parole when he testified against Grooms.

Locke testified that he and two of his cousins on two occasions entered the Crazy Horse Museum. First, in January 1984, they removed the horsehair headstall and sold it to Grooms. Subsequently, on May 13, 1984, they removed the beaded dress, Black Hills gold watchband, squash blossom necklace, and two pair of moccasins and sold them to Grooms. Locke noted that he and Grooms discussed the thefts

prior to their commissions and that Grooms specifically recommended to Locke that he steal the dress.

Grooms was charged via indictment with two counts of Grand Theft by Disposal of Stolen Property. He was found guilty on both counts and appeals.

## DECISION

### I.

Grooms objected to the State's admission of other stolen artifact evidence (a rock figurine, some pipestems, and a leather pouch) which disposal was attributed to him but was not included in the Pennington County Indictment. Grooms relies on SDCL 19–12–5 [1] and the general prohibition that evidence of other acts is inadmissible. Grooms' motion to exclude other artifact evidence was denied because it found that said evidence fell within the "plan" and "knowledge" exceptions of SDCL 19–12–5.

■ Relevance is a precursor to the admittance of any evidence, and this includes other act evidence. *See State v. Means*, 363 N.W.2d 565, 568 (S.D.1985); *State v. Wedemann*, 339 N.W.2d 112, 115 (S.D.1983). Once deemed relevant, evidence may only be admitted if it is more probative than prejudicial. *Means*, at 568; *Wedemann*, at 115. *See* SDCL 19–12–3. The trial court is vested with discretion in making its probative-prejudicial determination, and upon appeal, the trial court's ruling will not be disturbed absent an abuse of its discretion. *See Means*, at 568–69; *State v. Holland*, 346 N.W.2d 302, 309 (S.D.1984).

■ For other act evidence to come in under the "plan" exception, it is necessary to show that those other acts and the crime charged stem from the same or common or connected plan, scheme or transaction. J.

Weinstein & M. Berger, 2 *Weinstein's Evidence*, ¶ 404[16] (1986). *See State v. Willis*, 370 N.W.2d 193, 198 (S.D.1985). This Court has recently noted that SDCL 19–12–5 does not include the words "modus operandi" [2] but that "this term of legal art has been infused with the general rubric of 'plan' (contained in our statute) which certainly broadens the scope of the 'plan exception.'" *Willis*, 370 N.W.2d at 198.

■ The other act evidence (rock figurine, pipestems, and leather pouch) did have numerous similarities with the crimes charged. They were all Indian artifacts, which were stolen by Locke, sold to Grooms and then sold to Cooper. In addition, all of the deliveries from Grooms to Cooper took place around the same time; dress—May 15, 1984; headstall—June 8, 1984; rock figurine, pipestems, and leather pouch—June 10, 1984. The other act evidence was "introduced ... '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" J. Weinstein & M. Berger, 2 *Weinstein's. Evidence* ¶ 404[16], at 404–118 (1986) (quoting McCormick, *Evidence* § 157 (1954)).

■ Other act evidence was also admitted to show that Grooms knew that the items were stolen. Grooms argues that knowledge is not an issue because he never claimed that the Indian artifacts were not stolen. Instead, Grooms' defense is that he did not possess or deal with the goods in any way whatsoever and therefore other act evidence was improperly admitted. We do not agree. This Court has noted that the State has the burden of proving each element of the charged offense beyond a reasonable doubt. *State v. Means*, 363 N.W.2d at 568; *State v. Brewer*, 266 N.W.2d 560, 562 (S.D.1978). Knowledge that the goods were stolen is an element of Theft by Disposing of Stolen Property.

1. SDCL 19–12–5 provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. *Modus operandi* is a term used "to describe the particular method of a criminal's activity." *Black's Law Dictionary* 906 (5th ed. 1979).

SDCL 22–30A–7. Hence, the other act evidence was properly admitted to show knowledge.

 We note that the trial court permitted the testimony of an appraiser who estimated the value of the other acts evidence. Additionally, the rock figurine, pipestems, and leather pouch were examined by the jury during their deliberations. We fail to understand the rationale for these evidentiary admissions. The limited reasons for admittance of other act evidence appears to have been exceeded, and the extension of said evidence in this case comes perilously close to requiring reversal. Evidence of other acts is generally inadmissible. But if other acts evidence is introduced by exception, it must be scrupulously monitored to insure that it is considered only for the limited purpose(s) of its admittance. We caution the trial bar and bench that the exception aspect of this rule can reach a limit and the admittance of this evidence strains the bounds of evidentiary propriety. A trial court must perceive basic probative value and not unduly consume its own time.

## II.

We must decide if the circuit court was correct when it decided that Grooms' right to unfettered cross-examination of Cooper must be curtailed in order to insure a fair and orderly trial. Specifically, the court prevented Grooms, through the State's Motion in Limine, from questioning Cooper about the latter's supposed abuse of Grooms' children. Grooms relies largely on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and *State v. Wiegers*, 373 N.W.2d 1 (S.D.1985), in his argument that his right to confront his accusers and impeach their testimony is guaranteed under the Sixth Amendment to the United States Constitution, and under South Dakota Constitution Article VI, § 7. Both *Davis* and *Wiegers* hold that defendants are constitutionally entitled to impeach the prosecution's key witness by showing that those pivotal witnesses are biased. *See Davis*, 415 U.S. at 316, 94

S.Ct. at 1110, 39 L.Ed.2d at 354; *Wiegers*, 373 N.W.2d at 10.

However, Grooms overlooks that the trial court may, in its good judgment, control the realm of cross-examination. *State v. Reutter*, 374 N.W.2d 617, 627 (S.D.1985); *State v. Wounded Head*, 305 N.W.2d 677, 680 (S.D.1981); *State v. Strong*, 90 S.D. 652, 660, 245 N.W.2d 277, 282 (1976). A trial court's discretion may be exercised at the expense of excluding relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." SDCL 19–12–3.

 Grooms' child abuse information was found to be of such a collateral nature that it would transform the trial into a forum for a custody battle therefore confusing and misleading the jury. Grooms had ample opportunity to expose Cooper's bias when he was permitted, in detail, to introduce testimony regarding the custody argument and the relationships between himself, Cooper, and Linda White. In addition, Grooms never backed up his assertion that Cooper had abused Grooms' children or that Grooms had initiated any sort of action against Cooper as a result.

We find that the circuit court did not abuse its discretion when it refused to allow Grooms to delve into child abuse accusations during Cooper's cross-examination.

## III.

Both briefs dwell on an issue concerning Merle Locke being an accomplice; Grooms claiming that Locke was an accomplice and the State advocating that Locke was not an accomplice. The trial court held, as a matter of law, that Locke was not an accomplice. Grooms contends that the trial court should have given a cautionary instruction concerning accomplice testimony. For purposes of deciding this issue, we need not decide if Locke either was or was not an accomplice.

Grooms submitted two proposed jury instructions upon which the trial court expressed, in handwriting: "Denied, and ex-

ception allowed." Thereupon, the trial court affixed its signature and date. The submitted jury instructions were two photocopied pattern jury instructions and they were copies of South Dakota Pattern Jury Instructions—Criminal, 1–16–7 and 1–16–6 (alternate). Grooms' instructions were from the old set of Pattern Jury Instructions, although indicated as "new" or "revised" "1–1–78." Grooms did not request a jury instruction per the new pattern jury instructions nor our holdings in *State v. Hoadley*, 319 N.W.2d 505 (S.D.1982) and *State v. Johnson*, 81 S.D. 600, 139 N.W.2d 232 (1965).

▮ Proposed jury instructions should be submitted to the court in a form that facilitates their reading to the jury without change, and absent this ability proposed instructions "should always be refused...." *State v. Hellekson*, 13 S.D. 242, 247–48, 83 N.W. 254, 255 (1900). *See also State v. Boyles*, 260 N.W.2d 642 (S.D. 1977); *State v. Flack*, 77 S.D. 176, 89 N.W.2d 30 (1958). Grooms' submitted instructions would have (1) required Locke to be declared, as a matter of law, an accomplice and (2) required the trial court to modify, etc., submitted instructions. We hold that these instructions were not submitted in the proper form as mandated by SDCL 15–6–51(a).

Affirmed.

All the Justices concur.

FOSHEIM, Retired Justice, participating.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.