**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Burton EAGLE HAWK (# 15361) and Mary Ann Spirit Track (# 15362), Defendants and Appellants.**

**Nos. 15361, 15362.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1987.

Decided Aug. 5, 1987.

Richard D. Coit, Asst. Atty. Gen., Pierre, for plaintiff and appellee State; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Joseph E. Ellingson of Tobin Law Office, P.C., Winner, for defendant and appellant Eagle Hawk.

Richard F. Rahn of Grieves & Rahn, Winner, for defendant and appellant Spirit Track.

HENDERSON, Justice.

## ACTION/ISSUES

For purposes of clarity and convenience, we shall refer to defendants-appellants Mary Ann Spirit Track and Burton Eagle Hawk as appellants or parents. Both were found guilty of Abuse of or Cruelty to a Minor concerning their three children, Lionel, Malinda, and Burton Spirit Track. They contend the convictions should be reversed and separately raise three common issues in their appeals:

(1) Both appellants were entitled to judgments of acquittal;

(2) SDCL 26-10-1 is vague and indefinite; and

(3) trial court improperly instructed the jury and refused legitimate proposed instructions. Also,

(4) Mother argues that evidence of other bad acts was improperly admitted.

We affirm.

## FACTS

Appellants are natural parents of Burton Spirit Track (born November 16, 1983), Malinda Spirit Track (born December 17, 1984), and Lionel Spirit Track (born November 20, 1985). Father was twenty-three years old and Mother was eighteen years old when the incident charged occurred.

On January 23, 1986, Winner police were alerted that one of the Spirit Track children needed immediate medical attention. A police officer and a social worker proceeded to the Spirit Track residence. Upon their arrival, it was observed that three children required medical care. Transportation was provided via police cruiser to Medical Arts Clinic.

Examining physician Webb noted that all three children were extremely odoriferous and dirty. Burton Spirit Track had oozing and crusting sores covering his entire scalp causing matting of his hair. Lice and unidentified larger white insects crawled through his hair. Open sores were observed on his left arm, right elbow, and right knee. Evulsion of his right thumbnail and right big toenail had occurred.

Malinda Spirit Track had a fever. Lice-infected sores covered the entirety of her scalp resulting in matting of her hair. Her left ear canal was purulent and behind that ear were large oozing sores causing separation of ear and scalp. Pus was draining from the left eye and her left nostril was covered with numerous open sores. A sore was also evident on her upper left arm. Lastly, an examination of her left hand revealed evulsion of the third finger's nail.

Lionel Spirit Track was fussy and crying throughout his examination. He had a severe diaper rash accompanied by many open sores and lesions. Several festering sores were noted on his left leg. Dirt completely filled external parts of both ears and his hair contained lice eggs. Pus was draining from both eyes.[1]

Dr. Webb testified that the condition of all three children required their hospitalization. She further noted that the severity of sores on Malinda and Burton could have eventually evolved into life threatening infections if left unattended. Physician

---

1. Colored photographs of the condition of these children were admitted in evidence and are on review by this Court.

Webb testified that severe parental neglect was responsible for the medical problems of all three children. She stated repeatedly, in her opinion, severe neglect is abuse. She added, however, that her examinations revealed no clear evidence of any active (hitting or striking type) child abuse.

Appellants were each charged with violation of SDCL 26–10–1, Abuse of or Cruelty to a Minor, a Class 4 felony. Specifically, the Indictment alleged that appellants "did individually and conjointly, abuse and torment [their three children]" by "fail[ing] to furnish proper parental care and medical assistance...." A jury trial commenced on April 15, 1986. Both parents were found guilty of the crime charged. On May 19, 1986, each parent was sentenced to serve three years and six months in the South Dakota Penitentiary.

Each parent filed a Notice of Appeal. These appeals were consolidated for purposes of review by this Court.

## DECISION

### I.

▮ Appellants, in a facially persuasive manner, assert that their motions for acquittal should have been granted as State failed to demonstrate that they abused, exposed, tortured, tormented, or cruelly punished their children in violation of SDCL 26–10–1.[2] Parents predominantly advocate that severe neglect is not the equivalent of "abuse" or "torment" as was charged in the Indictment. They further argue that failure to provide proper medical care is an act that is properly chargeable under SDCL 25–7–16,[3] not SDCL 26–10–1. We are, however, unpersuaded by the parents' argument, which we summarize below.

**2.** SDCL 26–10–1 provides:
  Any person who abuses, exposes, tortures, torments or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony.

**3.** SDCL 25–7–16 provides:
  A parent of a minor child who intentionally omits without lawful excuse to furnish necessary food, clothing, shelter, medical attendance

*Parents' Argument*

Prior to its repeal and re-enactment in 1977, SDCL 26–10–1 provided:

  It shall be a Class 1 misdemeanor for any person intentionally, negligently, or unnecessarily to expose, torture, torment, cruelly punish, *or intentionally neglect any child under eighteen years of age or deprive such child of necessary food, clothing, shelter, or medical attendance.*

1977 S.D. Sess. Laws ch. 189, § 96 (emphasis added). The emphasized portion, *inter alia,* above was amended out in 1977. Also in 1977, SDCL 25–7–16 was changed "reduc[ing] the ... offense from a Class 6 felony to a Class 1 misdemeanor ..." which coincidentally was the pre–1977 offense level of SDCL 26–10–1.

It is therefore reasoned by parents that inclusion of severe neglect by the trial court within the ambit of SDCL 26–10–1 was error. Parallel 1977 amendments of SDCL §§ 26–10–1 and 25–7–16 (as discussed above) are offered as authority for this assertion. Parents note some courts have stated that "adoption of an amendment creates a presumption that the legislature intended to change preexisting law." *Andros v. American Family Mut. Ins. Co.,* 359 N.W.2d 46, 48 (Minn.App.1984) (citing *State v. Coin Wholesalers, Inc.,* 311 Minn. 346, 250 N.W.2d 583 (1976)).

Parents also argue that since no statutory definition exists for "abuse" and "torment" (the acts alleged in Indictment), their ordinary and plain meaning should be used. They urge that to include severe neglect within the meaning of the above two words would be to judicially expand the language and reach of a statute which is something we have previously refused to do. *See Petition of Famous Brands, Inc.,* 347 N.W.2d 882 (S.D.1984) (and authorities

or other remedial care or other means of support for his child is guilty of a Class 1 misdemeanor. If a parent, during a violation, leaves the state and is absent for more than thirty days, he is guilty of a Class 6 felony. A parent who chooses treatment for his child by spiritual means through prayer alone in lieu of medical attendance is not for that reason alone in violation of this section.

cited therein). Based on these arguments, parents argue their motions for acquittal were improperly denied.

### State's Argument

The trial court held that "abuse" and "torment" "are sufficiently broad to include the class of evidence that has been introduced by the State" in that those words "include inaction as well as physical, overt acts of striking, beating or other types of physically caused trauma." State, in its appellate advocacy, makes reference to a definition appearing in SDCL 40–1–1(2) regarding animal abuse [4] and cites SDCL 2–14–4 for the proposition that "[w]henever the meaning of a word or phrase is defined in *any statute* such definition is applicable to the same word or phrase *wherever it occurs* except where a contrary intention plainly appears." *Id.* (emphasis added).

It is also argued that the ordinary meanings of "abuse" and "torment" lend themselves equally to consequences of both active and inactive behavior.[5] *See State v. Williquette,* 129 Wis.2d 239, 385 N.W.2d 145 (1986); *Jakubczak v. State,* 425 So.2d 187 (Fla.App.1983); *Gullatt v. State,* 409 So.2d 466 (Ala.Cr.App.1981).[6] In *State v. Zobel,* 81 S.D. 260, 274, 134 N.W.2d 101, 109 (1965), this Court stated "each spouse has an equal duty to support and protect [their children] and cannot stand passively by and refuse to help them when it is reasonably within their power to do so." *See* 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 3.3, at 294 (1986) (where the authors note

> that criminal battery may be committed by an omission to act (if there exists a duty to act), as well as by an affirmative act. If a parent, knowing that injury is substantially certain to result in his infant child unless he acts to prevent it, fails to act, and the infant is injured but not killed as a result, the parent would doubtless be guilty of battery. The same result should follow if his omission amounted to recklessness, though he did not intend any injury to the child.)

(Footnotes omitted.)

*See also* 1 P. Robinson, *Criminal Law Defenses* § 86(c), at 444 (1984) (where this expert observes: "Liability for an omission can be imposed for any offense on the theory that the failure to perform conduct that one has a duty and the capacity to perform, is an adequate substitute for the conduct required by an offense definition.") (Footnote omitted.)

■ State maintains that parents simply place too much weight upon the 1977 amendments to SDCL §§ 26–10–1 and 25–7–16. It argues that at some factually determinable point, parental neglect (under SDCL 25–7–16) must become cruelty or abuse of a minor (under SDCL 26–10–1). State submits identification of this turning point is a question which the jury must answer. It is obvious to us (and was to the jury) that parents' treatment of these children was cruel, inhumane, conducive to in-

---

**4.** SDCL 40–1–1(2) provides:
Terms used in §§ 40–1–1 to 40–1–17, inclusive, and in chapter 40–2, unless the context otherwise plainly requires, shall mean:
\* \* \* \* \* \*
(2) "Torture," "torment," and "cruelty" shall include every act, omission, or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted[.]

**5.** "Abuse" is, *inter alia,* defined in *Webster's New Collegiate Dictionary* 5 (1980), as "improper use or treatment" and "physical maltreatment."
"Cruel" is, *inter alia,* defined in *Webster's New Collegiate Dictionary* 271 (1980), as "disposed to inflict pain or suffering: devoid of humane feelings," "causing or conducive to injury, grief, or pain," and "unrelieved by leniency."
"Cruelty" is, *inter alia,* defined in *Webster's New Collegiate Dictionary* 271 (1980), as "the quality or state of being cruel," "a cruel action," and "inhuman treatment."
"Torment" is, *inter alia,* defined in *Webster's New Collegiate Dictionary* 1223 (1980), as "extreme pain or anguish of body or mind: agony," "a source of vexation or pain," and "to cause severe [usually] persistent or recurrent distress of body or mind...."

**6.** Most of these cases involve a parent's failure to protect a child from a physical beating, or placing a child in the care of one who is strongly suspected of past abusive conduct. *Gullatt* is the exception; it affirms the child abuse verdict of an adult who neglected to feed her children— the act of abuse was starvation. All cases cited above do, however, clearly state that guilt may ride on an omission to act as well as a physical act.

jury, and recurringly painful. Parents' conduct was abusive under the standards developed by the trial court. Based upon the injuries resulting to these children, we agree with the State's point of view. What, pray tell, we ask, is the difference to the child be he afflicted by acts of commission or omission if, in the end, his body is racked with distress, agony, and torment? We perceive none.

## II.

■ Parents next argue that if we find SDCL 26–10–1 to encompass acts resulting from severe neglect, it is unconstitutionally vague. Parents' argument has two parts. First, that a person of ordinary intelligence would be unable to discern when his conduct amounts to felony child abuse as opposed to misdemeanor child neglect. Second, that amendments to SDCL §§ 26–10–1 and 25–7–16 mandate that neglect be charged under the latter section and vagueness results if neglect is charged under the former section. We are unsympathetic to these contentions.

Initially we note that "[a] statute will be held void for vagueness if the forbidden conduct is so poorly defined 'that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application....' " *State v. Blakey*, 399 N.W.2d 317, 318 (S.D.1987) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). *Accord, State v. Bad Heart Bull*, 257 N.W.2d 715, 720 (S.D.1977). The proscription against vagueness emanates from the Due Process Clause's mandate that people be given fair notice of prohibited conduct. *See Connally*, 269 U.S. at 391, 46 S.Ct. at 127, 70 L.Ed. at 328; 21 Am.Jur.2d *Criminal Law* § 17 (1981). However, we have held that "[c]ertainly it is not necessary to cover all possible parental mistreatment in the statute." *In re D.T.*, 89 S.D. 590, 596, 237 N.W.2d 166, 169 (1975). We hold, by way of certainty in the humanities, that it is axiomatic that persons of common intelligence need not guess that severe or extreme neglect can evolve into abuse. Accordingly, parents' void for vagueness argument fails.

## III.

■ Parents also advocate that the lower court erred when it instructed the jury in a manner not including the entire language of SDCL 26–10–1.[7] Parents also contend that jury instructions contained improper definitions of "abuse" and "torment."[8]

Parents claim that SDCL 26–10–1 should have been read to the jury in its entirety. To isolate "abuse" and "torment" is to mislead the jury, they maintain, because when those words were removed from their statutory context, the full meaning and import of SDCL 26–10–1 was lost. Parents again contend that severe neglect is not as serious as acts specifically referred to in the statute.

Additionally, parents note that the trial court instructed the jury pertaining to definitions of "abuse" and "torment." Parents advocate these definitions were improper and the trial court should have used their proposed instructions. We find these arguments unpersuasive.

The trial court structured its jury instructions to coordinate with charges made in the Indictment. "Abuse" and "torment" were charged in the Indictment and the trial judge indicated that other words of SDCL 26–10–1 were not included in jury instructions because these "acts were not alleged in Indictment." We agree.

This Court has recently held that when giving jury instructions, it is "not necessary" that the entire statute be recited.

---

**7.** Jury Instruction No. 3 reads:

It is provided by a statute of this State, insofar as it pertains to the charges in the Indictment, that any person who abuses or torments a minor in a manner which does not constitute aggravated assault, is guilty of a criminal offense.

**8.** Jury Instruction No. 5 provides in part:

As used in these Instructions, "abuse" means every act or omission or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted.

As used in these Instructions, "torment" means the causing of severe suffering of body or mind.

*Blakey*, 399 N.W.2d at 320. In fact, " '[i]nstructions should be confined to the issues made by the pleadings, and should not be broader or narrower than the indictment or information.' " *State v. Hochmuth*, 256 Iowa 442, 448, 127 N.W.2d 658, 661 (1964) (quoting 23A C.J.S. *Criminal Law* § 1311 (1961)). Also, "[i]t is sufficient if the judge's instructions to the jury include the elements of the crime charged." *Blakey*, 399 N.W.2d at 320 (citing *Cahill v. People*, 111 Colo. 29, 137 P.2d 673 (1943)). We view the elements as a vital criteria, not semantics. For parents to be entitled to reversal on this issue, they must not only show error, but they must also show that "the jury might and probably would have returned a different verdict if [their] instruction had been given." *State v. Grey Owl*, 295 N.W.2d 748, 751 (S.D.1980), *appeal after remand*, 316 N.W.2d 801 (S.D. 1982). *See State v. Bittner*, 359 N.W.2d 121, 125 (S.D.1984); *State v. Feyereisen*, 343 N.W.2d 384, 387 (S.D.1984). We are unable to hold that the court's jury instructions were improper and that parents were prejudiced therefrom.

### IV.

Mother alone advocates that it was reversible trial court error to admit evidence, elicited from her through cross-examination, regarding her prior acts of (1) overdosing on drugs, and (2) attempted fraudulent attainment of welfare benefits. We are not persuaded by this argument.

Initially, we note that admittance of evidence should be prefaced upon relevance, and a probative value that exceeds prejudicial effect. *See State v. Grooms*, 399 N.W.2d 358, 361 (S.D.1987); *State v. Means*, 363 N.W.2d 565, 568 (S.D.1985); SDCL 19–12–3. Generally, evidence of other bad acts is inadmissible. SDCL 19–12–5. *Grooms*, 399 N.W.2d at 361. But, introduction of such evidence may be permitted for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." SDCL 19–12–5. Additionally, SDCL 19–14–10 authorizes inquiry into specific instances of misconduct on cross-examination but requires that they must be probative of truthfulness or untruthfulness. *See* 3 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 608[05], at 608–32 (1985).

■ Mother's admission that she attempted to fraudulently obtain welfare benefits is "probative of [her] truthfulness or untruthfulness" as intended by SDCL 19–14–10. *See* 3 J. Weinstein and M. Berger, *supra* ¶ 608[05], at 608–32–33 (where the authors identify forgery, tax fraud, bribery, bankruptcy fraud, and making false statements as acts indicative of untruthfulness); 3A Wigmore, *Evidence* § 982, at 840 (Chadbourn rev. 1970) (specifying "fraud, forgery, perjury, and the like" as "misconduct ... indicat[ing] a lack of veracity."). *See also* Comment, *Use of Bad Character and Prior Convictions to Impeach A Defendant-Witness*, 34 Fordham L.Rev. 107, 111 (1965) (where this author perceptively notes:

It has been pointed out that evidence elicited upon cross-examination, unlike similar evidence which is inadmissible in the prosecutor's own case, "is not for the purpose of showing that [defendant] was the kind of person who would be willing to commit the offense charged, but solely for the purpose of diagnosing [defendant's] conscience and thereby enabling the jury to determine the extent of [defendant's] veracity and credibility as a witness.")

(Quoting *People v. Richardson*, 222 N.Y. 103, 107, 118 N.E. 514, 516 (1917)). Accordingly, as per SDCL 19–14–10, evidence obtained through cross-examination of Mother, regarding her fraudulent attempt to obtain welfare benefits, was properly admitted by the circuit court.

■ However, we are firmly convinced that the circuit court erred in admitting evidence, elicited through cross-examination of Mother, concerning her drug overdose while pregnant. This evidence does not parallel any of the exceptions identified by SDCL 19–12–5 and does not otherwise fall within the ambit of that statute. Neither is evidence of a remote-in-time overdose probative of "truthfulness or untruth-

fulness" as expressed by SDCL 19–14–10.[9] In fact, this testimony is unconnected to any issues in this case and is precisely the type of general bad character evidence prohibited by SDCL 19–12–5.

We also note that the circuit court failed to balance the probative value of this evidence against its prejudicial effect. If such a weighing was accomplished, we are certain the circuit court judge would have disallowed this evidence as its probative value is substantially overcome by its prejudicial effect. *See* SDCL 19–12–3. *See also Grooms*, 399 N.W.2d at 362. Additionally, it is crucially important that circuit court judges perform this probative-prejudicial balancing *on the record.*

■ Despite our ruling that this evidence was improperly admitted, we do not reverse the circuit court, as its error was harmless and not prejudicial to Mother's substantial rights. " 'Whether error is prejudicial must be determined on the basis of the facts in any given case.' " *State v. Remacle*, 386 N.W.2d 38, 40 (S.D.1986) (quoting *State v. Waller*, 338 N.W.2d 288, 291 (S.D.1983)). Prejudicial error is that which, in all probability, has produced some effect upon the final result and to have affected the rights of the party assigning that error. *State v. Bittner*, 359 N.W.2d at 125; *State v. Dace*, 333 N.W.2d 812, 816 (S.D.1983). In this case, the evidence of Mother's abuse and torment of her children is absolutely overwhelming. Open sores on their bodies, pus draining from eyes, purulent ear canals, scalps marked by sores and contaminated with lice, evulsion of fingernails and a toenail were conditions which required hospitalization. Therefore, we are satisfied the evidence was of such a damning nature that a single incorrect evidentiary ruling did not produce some effect upon the final result, or was so detrimental to Mother's right to a fair trial as to mandate reversal. *See State v. Chief Eagle*, 377 N.W.2d 141, 144 (S.D.1985); *High Elk*

*v. State*, 344 N.W.2d 497, 501–02 (S.D. 1984).

Affirmed.

MILLER, J., concurs.

WUEST, C.J., concurs specially.

MORGAN and SABERS, JJ., dissent.

WUEST, Chief Justice (specially concurring).

I concur, except as to the definition of prejudicial error. "[P]rejudicial error occurs when the appellant establishes that under the evidence the jury might and probably would have returned a different verdict if the alleged error had not occurred." *State v. Davis*, 401 N.W.2d 721, 725 (S.D.1987).

SABERS, Justice (dissenting).

I dissent.

### 1. *Improper Indictment*

Burton Eagle Hawk and Mary Ann Spirit Track were improperly indicted for abuse of a minor. The indictment provided:

That between July 1, 1985 and January 23, 1986, ... [defendants] ... did individually and conjointly, abuse and torment Lionel ... Melinda ... and Burton ... minors, in a manner which did not constitute aggravated assault, ... [in] ... [t]hat they failed to furnish proper parental care and medical assistance resulting in the minors suffering great pain, physical and mental, from diseases and injuries, in violation of SDCL 26–10–1[.]

The Tripp County state's attorney improperly equated abuse with neglect. This error resulted in the improper grand jury indictment. This error further resulted in improper jury instructions equating abuse with neglect and in the majority opinion which affirms that error.

In my view the majority opinion is not able to see the difference between abuse and neglect because of the "damning nature" of the results of the neglect. There

---

**9.** A prosecutor's ability to delve into a defendant's past misdeeds is a limited one " 'testimony which does not tend legitimately to discredit [defendant's] evidence is irrelevant and should be excluded.' " Comment, *supra* 34 Fordham L.Rev., at 111 (quoting *People v. Richardson*, 222 N.Y. 103, 107, 118 N.E. 514, 516 (1917)).

is no evidence of abuse in this record; there is no evidence of torment in this record, there is simply evidence of "[o]pen sores on their bodies, pus draining from eyes, purulent ear canals, scalps marked by sores and contaminated with lice, evulsion of fingernails and a toenail ... requir[ing] hospitalization." Every disease and sore enumerated by the majority opinion is proof of neglect—not abuse. Neglect, even severe neglect, does not constitute abuse or torment under this statute, no matter how many times the majority opinion says it does.

The state's attorney improperly charged the defendants with a felony on misdemeanor proof. This is clearly improper and should be reversed.

As stated in the majority opinion, in 1977, SDCL 26–10–1 originally provided:

> It shall be a Class 1 misdemeanor for any person intentionally, negligently, or unnecessarily to expose, torture, torment, cruelly punish, or intentionally neglect any child under eighteen years of age or deprive such child of necessary food, clothing, shelter, or medical attendance.

If this statute were still in existence today the defendants could have been convicted of a violation which was a Class 1 misdemeanor. However, in 1977, SDCL 26–10–1 was changed to provide for a felony:

> Any person who abuses, exposes, tortures, torments or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony.

In addition, the misdemeanor statute, SDCL 25–7–16, provides in part:

> A parent of a minor child who intentionally omits without lawful excuse to furnish necessary food, clothing, shelter, medical attendance or other remedial care or other means of support for his child is guilty of a Class 1 misdemeanor.

A fair reading of these statutes makes it clear that under present South Dakota law neglect, even severe neglect, does not constitute abuse or torment.

Even more important, in this case the indictment charged the defendants with a Class 4 felony based on language taken from the Class 1 misdemeanor statute, SDCL 25–7–16. Failure to furnish proper parental care and medical assistance is a violation of SDCL 25–7–16, a misdemeanor, not of SDCL 26–10–1, a felony.

It is obvious that the South Dakota Legislature knew what it was doing when it provided intentional abuse, torment, etc. to be a felony and intentional omissions to furnish food, clothing, medical attention a misdemeanor. Even if that were not the case, there is no showing here that the defendants ever intentionally did anything. There is no showing that defendants were awake, conscious, or sober enough to form any intent. An omission or neglect can be the result of alcohol problems, as in this case, rather than the result of a criminal act.

### 2. *Improper Focus and Jury Instructions*

The majority opinion appears to adopt the State's argument that at some factually determinable point parental neglect must become cruelty or abuse of a minor, and submits that it was obvious to the majority (and to the jury) that the parents' treatment of the children was cruel, inhumane, conducive to injury, and recurringly painful. I do not think the majority opinion can blame this case on the jury when the state's attorney improperly indicted the defendants and the trial court improperly instructed them. It is not enough to say that the parents' conduct was abusive under the standards developed by the trial court, especially when the standards developed by the trial court were clearly in error.

The following language of the majority opinion pin points the fatal defect in their reasoning.

> What, pray tell, we ask, is the difference to the child be he afflicted by acts of commission or omission if, in the end, his body is racked with distress, agony, and torment? We perceive none.

The state's attorney, the trial court, and now the majority opinion all have the wrong focus. Their focus was on the body racked with distress, agony, and torment. In determining a violation of a criminal statute, such as SDCL 26–10–1, the focus is supposed to be whether the intent and conduct of the defendant constitutes a viola-

tion under the statute. The focus should be on the conduct of the defendant, not on the final medical condition of the alleged victims. Accordingly, the current felony statute simply does not include cases of neglect, not even severe neglect. There is no proof of intentional acts. This statute simply cannot mean what the State argues it means in view of the prior statute and the present amendment. All of the cases generally distinguish abuse (intentional) from neglect (negligent) and if they do not, they should. Jury Instruction No. 5 which provides in part that "abuse" 'means every act or omission or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted,'" and "torment" 'means the causing of severe suffering of body or mind'" was clearly improper and the parents were prejudiced thereby. Therefore, the indictment was improper and the trial court's instruction that abuse equaled neglect constituted reversible error.

The extent to which the majority opinion strains to reach its preconceived result affirming the trial court is also evident in its selective use of the dictionary definitions for abuse, torment, cruel, and cruelty. In the first place, neither cruel nor cruelty are involved because they were not used in the indictment. In defining "torment" the majority opinion leaves out the first definition which is "the infliction of torture (as by rack or wheel)." A fair reading of the statutes and the definitions of "abuse" and "torment" substantially support the dissent and not the majority opinion. At any rate, by no stretch of the imagination, or *strained* interpretation of any dictionary definitions did the defendants in this case inflict torture (as by rack or wheel). There is no showing that the defendants intended anything, much less torture.

### 3. *Prior Bad Acts*

In its effort to sustain the convictions, the majority opinion impliedly condones the State's use, through cross-examination, of prior bad acts of (1) overdosing on drugs while pregnant, and (2) attempted fraudulent attainment of welfare benefits. The majority opinion gives lip service to SDCL 19–12–5 for the proposition that evidence of other bad acts is inadmissible and then goes on to approve the admission of "Mother's admission that she attempted to fraudulently obtain welfare benefits [because it was] 'probative of [her] truthfulness or untruthfulness' as intended by SDCL 19–14–10." This testimony is so prejudicial that it would be absolutely impossible to balance the "probative value against its prejudicial effect."

The majority opinion acknowledges that it is firmly convinced that the circuit court erred in admitting evidence, solicited through cross-examination of mother, concerning her drug overdose while pregnant. After noting that the circuit court failed to balance the probative value of this evidence against its prejudicial effect, the majority notes their "certainty that the circuit court judge would have disallowed this evidence as its probative value is substantially overcome by its prejudicial effect."

The majority opinion then says: "Despite our ruling that this evidence was improperly admitted, we do not reverse the circuit court, as its error was harmless and not prejudicial to Mother's substantial rights." The majority opinion is attempting to overrule *State v. Dokken*, 385 N.W.2d 493 (S.D. 1986) and *State v. Rufener*, 392 N.W.2d 424 (S.D.1986) without even mentioning the names of the cases.

### 4. *Conclusion*

The children were neglected, even severely neglected. The neglect resulted in serious illnesses and diseases. The children were removed from their surroundings and found to be dependent and neglected, which was *proper*. The parental rights of the defendants to the children were terminated, which was also *proper*. The defendants were indicted, convicted, and sentenced for felonies instead of misdemeanors, which was clearly *improper*. We should reverse and remand for retrial on *proper* misdemeanor charges.

I am authorized to state that MORGAN, J., joins in this dissent.