## In the Matter of R.S.S., Delinquent Child.

### No. 17174.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1991.

Decided Aug. 28, 1991.

---

Roger A. Tellinghuisen, Atty. Gen., Robert J. Carl, Jr., Asst. Atty. Gen., Pierre, for appellee.

Gwendolyn Laprath, Gregory, for appellant.

SABERS, Justice.

R.S.S. (defendant),[1] a twelve-year-old girl, challenges the admissibility of hearsay and prior bad act evidence and sufficiency of the evidence to sustain her adjudication as a delinquent.

### Facts

Mother and father, parents of four-year-old daughter S.H., planned to attend a dance Saturday night, August 5, 1989, but found none of their regular babysitters available. On the recommendation of mother's friend, they hired defendant, who had recently moved into the area.

Mother and father left S.H. alone with defendant around 8:00 p.m. They returned home from the dance at midnight. Father went to the door of the house and mother remained in the car to drive defendant home. When father entered the house he found S.H. crying hysterically. S.H. had a washcloth over her face. When father asked defendant what had happened, she replied that the two had been roughhousing on the living room couch and that S.H. fell and hurt herself. Father paid her and she left the house.

When defendant got into the car, mother asked her what was wrong because mother, too, heard crying from inside the house when father opened the door. Defendant replied that S.H. had fallen and cut her lip on the stove. It is mother's recollection that defendant indicated the kitchen stove, but there is also a heating stove in the living room near the couch and defendant maintains she was referring to this stove.

When mother returned home, S.H. was still crying. Under the washcloth covering her face, S.H.'s lip was badly cut, there were red and blue blotches on her face and her eyes were nearly swollen shut. Shortly after mother's return, S.H. vomited a red phlegm.

Mother stayed up with S.H. all night. Although she asked S.H. what had happened, S.H. provided no information.

The next morning, mother and father discovered two marks or sores on S.H.'s stomach and leg, and reddened bald spots on her head. They also found three clumps of hair in the bathroom and the living room.

Mother and father questioned S.H. Sunday morning and again Sunday afternoon. According to their testimony, S.H. told them that defendant slapped her, kicked her in the stomach, pulled her hair and threatened to burn her with candles. S.H. did not claim defendant actually burned her and she could not account for the marks on her stomach and her leg.

Later that afternoon, mother took S.H. to the home of defendant. There they con-

---

1. Although this is not a criminal proceeding, SDCL 26–7A–105, the alleged delinquent child will be referred to throughout this opinion as "defendant" for purposes of clarity. *See* SDCL 15–26A–63.

fronted her and her parents with S.H.'s accusations, but defendant denied that she hit S.H.

Defendant continues to maintain that she did not strike S.H., that she herself noticed the sore on S.H.'s leg before mother and father left for the dance and remarked on it to mother, and that any injuries S.H. received while she babysat her were the result of nothing more than rough play and rough hairbrushing following a bath. Defendant also suggests that cherry tomatoes S.H. ate that night may account for the red vomitus.

On Tuesday, August 8, 1989, mother took S.H. to a local clinic where a physician's assistant examined her and determined that she had been physically abused. He also diagnosed the marks on S.H.'s stomach and leg as either burn marks or impetigo caused by an infection. That same day a child protection worker with the Department of Social Services interviewed S.H. and mother, and took photographs of S.H. Both the physician's assistant and the child protection worker testified that S.H. told them her babysitter had slapped her and pulled her hair. The child protection worker also testified that S.H. reported defendant threw her around, threatened her with lighted candles and gave her a bath contrary to mother's instructions. According to the child protection worker's testimony, S.H. denied being sexually abused by defendant and could not remember having been burned with the candles.

On September 1, 1989, state filed a petition alleging that defendant was a delinquent because she violated SDCL 26–10–1.[2] During October, 1989, the state filed three motions:

(1) To admit hearsay evidence from mother, father and the child protection worker about what S.H. said to them.

(2) To admit prior bad act evidence showing defendant had sexual contact with J.C., another four-year-old she babysat.

(3) To admit prior bad act evidence showing defendant spanked T.B., a ten-month-old she babysat.

On October 31, 1989, the court held a hearing on the admissibility of the hearsay and prior bad act evidence and on the delinquency adjudication. After examining S.H. in open court, the trial judge found her unavailable as a witness and admitted the hearsay testimony of mother, father and the child protection worker.

After an in-chambers examination of ten-month-old T.B.'s eight-year-old sister, the court found the sister available as a witness and admitted her prior bad act testimony that she saw defendant spank T.B. two months earlier while babysitting her and T.B.

Finally, the court admitted the prior bad act testimony of the mother of four-year-old J.C., who testified that defendant had sexual contact with J.C. three months earlier. J.C.'s mother did not witness this sexual contact. Instead, J.C.'s mother provided hearsay testimony about what J.C. told her some six weeks later. The court admitted the testimony after attempting an interview with J.C. in chambers. The court found that J.C., like S.H., was unavailable as a witness and that the hearsay statement of J.C.'s mother had "the necessary guarantees of trustworthiness[.]"

On November 1, 1989, the court adjudicated defendant a delinquent child, entering findings of fact and conclusions of law to that effect on November 21. At the dispositional hearing held April 12, 1990, the court ordered defendant to complete a course of counseling with her parents, placed her on probation for a period of eighteen months, ordered her to obey authority figures and to attend school, and restricted her from babysitting for anyone but immediate family members.

On appeal defendant challenges:

2. SDCL 26–10–1 provides: "Abuse of or cruelty to minor as felony. Any person who abuses, exposes, tortures, torments or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony."

(1) The admissibility of the prior bad act evidence;

(2) The admissibility of the hearsay evidence; and

(3) The sufficiency of the evidence to sustain her adjudication as a delinquent child.

### 1. Prior Bad Act Evidence

The court admitted two pieces of evidence about prior bad acts allegedly committed by defendant: the testimony of T.B.'s sister that she saw defendant spank T.B., and the testimony of J.C.'s mother that defendant had sexual contact with J.C. Because J.C.'s mother did not testify about anything she witnessed, but only about what J.C. told her, the testimony of J.C.'s mother is also hearsay.

SDCL 19-12-5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

SDCL 19-12-5 serves two purposes. It articulates the basic rule that "[g]enerally, evidence of other bad acts is inadmissible," *State v. Eagle Hawk*, 411 N.W.2d 120, 125 (S.D.1987), and permits exceptions to this general rule where the purpose of prior bad act evidence is not to show that defendant is a bad person, but to prove one of the elements enumerated in the statute. *Id.* "The trial court must first determine if such evidence is relevant for one of these purposes and, if so, to balance the probative value against its prejudicial effect." *State v. Itzen*, 445 N.W.2d 666, 668 (S.D.1989) (*citing State v. Reutter*, 374 N.W.2d 617 (S.D.1985)).

■■■ Even if prior bad act evidence is found to be relevant to a material issue in the case under SDCL 19-12-5, it may still be excluded if its prejudicial effect substantially outweighs its probative value. SDCL 19-12-3; *State v. Klein*, 444 N.W.2d 16, 18-19 (S.D.1989). It is "crucially important that circuit court judges perform this probative-prejudicial balancing *on the record.*" *State v. Eagle Hawk, supra*, at 126 (emphasis original). If the court makes the required evaluation, and makes a record that it has done so, this court will not disturb its conclusion that prior bad act evidence is relevant and that its probative value is not substantially outweighed by its prejudicial effect unless we find the court abused its discretion. *State v. Itzen, supra*, at 668; *State v. Klein, supra*, at 19. *See also State v. Bradley*, 431 N.W.2d 317, 324 (S.D.1988), and *State v. Basker*, 468 N.W.2d 413, 415 n. 1 (S.D.1991).

#### a. Testimony of J.C.'s Mother

■■■ There are no findings in the record that the testimony of J.C.'s mother is relevant to any element enumerated in SDCL 19-12-5, or that its probative value is not substantially outweighed by its prejudicial effect. As we said in *State v. Eagle Hawk, supra*, at 126, "[i]f such a weighing was accomplished, we are certain the circuit court judge would have disallowed this evidence as its probative value is substantially overcome by its prejudicial effect."

J.C.'s mother testified that some six weeks after defendant last babysat J.C., and after J.C.'s family had moved to a new community, she observed J.C. touching her vagina one day after a bath. When she asked J.C. why she was doing that, J.C. replied that defendant had both touched and licked her there, and that defendant had instructed J.C. not to tell her mother. J.C.'s mother also gave testimony about a spanking incident involving another daughter and defendant.

Under SDCL 19-12-5, we fail to see how the testimony of J.C.'s mother, even if true, is relevant to any material issue against defendant. The testimony proves nothing about defendant's possible motives for abusing S.H. It proves nothing about what she intended with respect to S.H. It proves nothing about any preparation, plan or knowledge in the mind of defendant. It does not identify her as the abuser of S.H.

It does not demonstrate that what happened to S.H. was no accident.

In short, the testimony of J.C.'s mother has nothing to do with what happened to S.H. on August 5, 1989. The testimony was offered for the sole purpose of painting defendant as a bad person who was capable of abusing children and who therefore probably abused S.H. The testimony had no "other purpose" except to "prove the character of [defendant] in order to show that [s]he acted in conformity therewith." That is precisely the kind of prior bad act evidence excluded by SDCL 19–12–5. To read the exceptions contained in SDCL 19–12–5 so elastically as to include the testimony of J.C.'s mother is to allow the exceptions to swallow the basic rule that prior bad act evidence going to character is inadmissible. *See State v. Rufener,* 392 N.W.2d 424, 429 (S.D.1986) (*Rufener I*) (Morgan, J. (concurring specially)).

The court also failed to balance the probative value of such testimony against its prejudicial effect. This testimony was the only evidence presented which accused defendant of sexual abuse. It is highly inflammatory. Moreover, its probative value is questionable, in that it is based on the declarations of a four-year-old child six weeks after the alleged act in response to a question from her mother about why she was touching herself. J.C.'s mother also testified that she employed three other babysitters during this same time period. It would be difficult to conclude that the probative value of this testimony is not substantially outweighed by its prejudicial effect.

In view of the minimal relevance of the testimony of J.C.'s mother, and because the court made no probative value/prejudicial effect balancing in the record, we find the court abused its discretion in admitting this prior bad act testimony. *See State v. Eagle Hawk, supra,* at 125–126. We also find the testimony inadmissible as hearsay, which we discuss below in issue 2b.

### b. *Testimony of T.B.'s Sister*

In regard to the testimony of T.B.'s sister that she saw defendant spank T.B., the court recites on the record that the testimony of T.B.'s sister "is relevant" and that "the nature of her testimony [has] probative value [not] substantially outweighed by any danger of unfair prejudice that might result. The testimony of this young lady ... has to do with intent and motive, state of mind and absence of mistake." However, once again, we conclude that this testimony bears no relevance to any material issue in this case, and we find it inadmissible prior bad act evidence under SDCL 19–12–5.

### 2. Hearsay Evidence

The court admitted four pieces of hearsay evidence challenged by defendant: the testimony of mother, father and the child protection worker about what S.H. told them, and the testimony of J.C.'s mother about what J.C. told her. We have already concluded that the testimony of J.C.'s mother was inadmissible prior bad act evidence. We now consider whether it, along with the testimony of mother, father and the child protection worker, was also inadmissible hearsay evidence.

In general terms, hearsay evidence is inadmissible. SDCL 19–16–4. However, there are numerous exceptions to the hearsay rule, including the "excited utterance" exception at SDCL 19–16–6.[3] Even hearsay which does not fall into one of the many exceptions to the hearsay rule may still be admissible under SDCL 19–16–35 if certain conditions are met.[4] The primary

---

3. SDCL 19–16–6 provides:

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19–16–4, even though the declarant is available as a witness.

4. SDCL 19–16–35 provides:

A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

requirement of SDCL 19–16–35 is that the declarant be unavailable to testify at trial. In the case of a child, the court may determine that even though the child is physically present in the courtroom, she may still be "unavailable" within the meaning of the statute because of age and inability to "testify meaningfully." *State v. McCafferty*, 356 N.W.2d 159, 163 (S.D.1984).

In addition to the unavailability of the declarant to testify, hearsay must pass five other tests in order to be admitted under SDCL 19–16–35:

(1) There must be sufficient "circumstantial guarantees of trustworthiness."

(2) The hearsay must provide evidence of a "material fact."

(3) The hearsay must be "more probative" than other available evidence.

(4) The "general purposes of these rules and the interests of justice" must be served by admission of the hearsay.

(5) The adverse party must have notice.

■ We review a trial court's decision to admit hearsay evidence under the same "abuse of discretion" standard as we review its decision to admit prior bad act evidence. *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986); *State v. Bult*, 351 N.W.2d 731, 736 (S.D.1984).

### a. *Hearsay Declarations by S.H.*

■ Although the state offered the testimony of mother, father and the child protection worker under both the excited utterance exception and SDCL 19–16–35, the court appears to have relied exclusively on SDCL 19–16–35 to admit their testimony.

We find no abuse of discretion in the court's findings that S.H. was unavailable to testify and that the testimony of those who reported her out-of-court declarations met the requirements of trustworthiness, probativeness, materiality and the interests of justice under SDCL 19–16–35. Also,

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently

there was notice to defendant of the hearsay testimony.

### b. *Hearsay Declarations by J.C.*

We also find no abuse of discretion in the court's finding that J.C. was unavailable as a witness within the meaning of SDCL 19–16–35, in that J.C. would not address the judge at all in chambers. However, we question whether the court's inquiry into the trustworthiness or reliability of the testimony was sufficient.

■ Although the ultimate decision to admit or not admit evidence is reviewable under the "abuse of discretion" standard, the court's preliminary determination of whether the hearsay evidence is reliable will not be overturned unless it is clearly erroneous. *State v. Luna*, 378 N.W.2d 229, 238 (S.D.1985). The court should not arrive at this determination summarily, but should carefully weigh all the indicia of reliability.

The trial court, in determining the sufficiency of the indicia of reliability, should consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertions, and the reliability of the child witness. *State v. McCafferty*, 356 N.W.2d at 164.

■ As indicated above, J.C.'s declaration to her mother about what defendant did to her was made six weeks after the alleged act in another location. They were made in response to her mother's inquiry about why she was touching herself. J.C. had three other babysitters during the same time period. J.C. was four years old. When the reliability of the declarant's evidence is such a close question, it is especially important for the court to make a record that it has fully considered each element of reliability as set forth in *McCafferty, supra*, and *Luna, supra*.

■ In *State v. Spronk*, 379 N.W.2d 312, 313 (S.D.1985), we said:

in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Spronk claims the trial court did not make sufficient findings of indicia of reliability concerning hearsay statements admitted at trial. We agree.... [N]o clear findings of fact can be gleaned on which the judge relied in ruling that the child's statements made to her mother and grandmother and the social worker were sufficiently reliable to be admitted under SDCL 19–16–35[.] We accordingly remand with direction to enter particular findings of facts and conclusions of law concerning the reliability of hearsay statements admitted at trial.

The court entered no findings of fact or conclusions of law about the presence or absence of indicia of reliability in the declaration of J.C. to her mother. The court's findings on the subject at trial are limited to a single conclusory sentence: "I find that this hearsay statement has the necessary guarantee of trustworthiness, having been made by a young girl to her mother."

We find the court's failure to make more exacting findings about a declaration of such marginal reliability to be error.

### 3. Non–Reversible Error

In the adjudicatory findings of fact and conclusions of law, the trial court made no reference to the prior bad act testimony or the hearsay declarations by J.C. It did find the hearsay testimony of S.H.'s parents and the child protection worker to be admissible and we agree. The only substantive finding relating to the merits of the allegations was Finding VIII:

This Court finds that on the evening of August 5, 1989, ... [defendant] on several occasions pulled [S.H.'s] hair causing a loss of hair from the scalp; that [defendant] on several occasions hit [S.H.] causing her to cry and further causing injuries to [S.H.'s] face including bruises and abrasions below the eyes and the lips; that [defendant] threatened to burn [S.H.] with hot candle wax; that such actions by [defendant] upon [S.H.] amounted to abuse, torment and punishment for which there was no justification.

There is no reference in the trial court's findings of fact and conclusions of law which would indicate that it considered the inadmissible bad act and hearsay testimony.

■ When an action is tried to the court, the presumption is that improperly admitted testimony is disregarded. *People in Interest of M.W.*, 374 N.W.2d 889, 893 (S.D.1985); *Matter of N.J.W.*, 273 N.W.2d 134, 138 n. 3 (S.D.1978); *Hagin v. DeGeest*, 85 S.D. 418, 185 N.W.2d 478, 484 (1971); *Application of Kiser*, 83 S.D. 272, 158 N.W.2d 596, 601 (1968); *Sulzbach v. Town of Jefferson*, 83 S.D. 156, 155 N.W.2d 921, 923 (1968); *In re Hoisington's Estate*, 67 S.D. 280, 291 N.W. 921, 922 (1940); *Murdo Ind. Sch. Dist. v. Litzenberg*, 58 S.D. 162, 235 N.W. 606, 606–07 (1931); *Durand v. Preston*, 26 S.D. 222, 128 N.W. 129, 130 (1910). In a trial to the court in which "admissible evidence supports the findings, [additional] evidence, though inadmissible, is nonprejudicial." *Achtien v. City of Deadwood*, 408 N.W.2d 756, 758 (S.D.1987) (citing *N.J.W.*, 273 N.W.2d at 138).

■ The trial court's order of disposition also indicates that it did not consider the inadmissible evidence. Considering the seriousness of the alleged delinquent acts, the disposition was lenient. The trial court placed defendant on probation for eighteen months under the supervision of a court services officer on condition that she: (1) obey her parents and all others in a supervisory capacity over her; (2) attend school regularly with no unauthorized tardiness or absenteeism; (3) not babysit during the probationary period except for family members; and (4) complete a counseling program with her parents. The court also reserved the right to request further psychological testing if necessary.

In summary, the trial court received certain inadmissible testimony. However, under the settled law of this state, where the trial is to the court rather than to the jury, the presumption is that improperly admitted testimony has been disregarded. That presumption appears valid here. The trial court had ample evidence, beyond the inadmissible evidence, to make the findings of delinquency. Additionally, there is no indication that the trial court relied upon the

inadmissible testimony because no reference was made to it in the findings. The lenient disposition also indicates that the trial court was more persuaded by the admissible testimony than it was by the inadmissible.

Therefore, there was sufficient evidence of abuse and cruelty to this minor by defendant even without the inadmissible hearsay and prior bad act evidence, and we affirm.

AMUNDSON, J., concurs.

MILLER, C.J., and WUEST, J., concur in result.

HENDERSON, J., dissents in part and concurs in result in part.

WUEST, Justice (concurring in result).

I concur in the result of this case. I do not wish to be bound by the majority holding on the "bad acts" testimony and would prefer that R.S.S. not be referred to as defendant. However, I do agree with the majority's application of the rule, "when an action is tried to the court, the presumption is that improperly admitted testimony is disregarded."

MILLER, C.J., joins this special writing.

HENDERSON, Justice (dissenting in part and concurring in result in part).

### DISSENT ON TERMINOLOGY

Throughout the entirety of Chapter 26–8, Dependent, Neglected and Delinquent Children, not once do the statutes thereunder address a "child" as a "defendant;" rather under Definition of Terms, SDCL 26–8–1, the word "child" is defined. More specifically, SDCL 26–8–7 addresses and defines a "delinquent child." Before us, on appellate review, we have an appeal from an Order of Disposition declaring R.S.S. a "delinquent child" dated April 12, 1990, and ordering eighteen months probation and counseling. Juvenile proceedings are not criminal cases. At page 377, Black's Law Dictionary, 5th Edition, West Publishing, 1979, it is written:

Defendant. The person defending or denying; the party against whom relief is or recovery is sought in an action or suit or the accused in a criminal case.

Petitions in South Dakota, not complaints, indictments, or informations, are used to present a juvenile case to a circuit judge. This results because of the language in SDCL 26–8–10, which, inter alia, requires that the petition be denominated as being in the "interest of the child." Therefore, all proceedings are in the interests of the child and the child is never to be recognized as a criminal defendant. The trial court should balance the fundamental right of the parent with the *best interests of the child* and the public. *People in Interest of P.M.*, 299 N.W.2d 803 (S.D.1980). To use the word "defendant," referring to the child as such, is antithetical to the entire scheme and purpose of this state's juvenile code. As the majority opinion approvingly describes this "child" as a "defendant," violating the very nature of these proceedings, and to countenance such a description in the highest court of this state, would be offensive to the trial judges, legislators, parents, children, and social agencies of this state, I expressly dissent to the use of such terminology.

### DISSENT

### SCOPE OF REVIEW

### IN JUVENILE PROCEEDINGS

Majority opinion fails to delineate and distinguish the sequential presentation of factual proof in the adjudicatory and dispositional phases of juvenile proceedings. We must not confuse the requirements of proof in civil evidence, criminal evidence, and juvenile proceedings evidence. Under SDCL 19–9–14(7), strict rules of evidence do not apply to "Disposition hearings in juvenile court." *See also, In Matter of C.J.H.*, 371 N.W.2d 345 (S.D.1985). Note current opinion, *Matter of H.M. and S.M.*, 474 N.W.2d 267, handed down by this Court August 14, 1991, written by Justice Wuest, joined by three Justices, with Justice Sabers dissenting on "hearsay evidence" at the dispositional hearing, said dissent postured against the juvenile code

and precedent in this Court. By implication, the "Rules of Evidence" do apply to adjudicatory proceedings. Why? Because SDCL 19-9-14, in its last sentence, expresses: Those chapters other than those with respect to privileges *do not apply* in the following situations: (1) (2) (3) (4) (5) (6) (7) Disposition hearings in juvenile court.

Further, SDCL 26-7A-34(2) significantly broadens the trial court's responsibilities, and, therefore his discretion, permitting the trial court to take evidence at the dispositional hearing on (a) history (b) environment (past and present), physical, mental, and moral condition of the child and of the child's parents.

Majority's employment of the application of strict rules of evidence, found in severed breakdowns by alphabetical letters, using a criminal law case such as *State v. Luna*, is entirely inapposite in light of the above statutes and authorities. Unfortunately, the tendered majority opinion cites several other criminal cases.* It mistakenly attempts to implant the criminal rules of evidence upon juvenile proceedings.

Majority opinion needlessly tracks the Rules of Evidence herein when it appears that the trial court did not refer to "inadmissible bad acts" or "hearsay evidence." Rather, trial court focused on physical

abuse on the evening of August 5, 1989. There are seven and one-half pages of the majority opinion on these two subjects. If the trial court did not base a decision upon either of these subjects, why does the majority opinion discourse, for seven and one-half pages, i.e., approximately 1,800 words, upon these two subjects? Is it not sua sponte and obiter dicta?

Therefore, as the thread of the majority opinion is inapposite and not applicable to the trial court's decision, I dissent on the scope of review which is interspersed throughout the opinion spawning difficult, if not impossible, dissection.

## CONCURRING IN RESULT IN PART

I concur in part to two paragraphs of this opinion *only*, i.e., the first full paragraph on page 750 thereof (concerning presumptions on improperly admitted testimony) and the last paragraph on page 750 (regarding the trial court's decision being based on admissible testimony).

---

* Other criminal cases cited are *Itzen, Reutter, Klein, Eagle Hawk, Bradley, Basker, Rufener,* *Bawdon, Bult, McCafferty,* and *Spronk.*